[No. B112980. Second Dist., Div. Two. Aug. 20, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
EUGENIO RODRIGUEZ, Defendant and Appellant.

158

**COUNSEL**

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Pamela C. Hamanaka and Alan D. Tate, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ZEBROWSKI, J.**—In this case of first impression, appellant Eugenio Rodriguez (defendant) was convicted of first degree murder. The special

circumstance established by Penal Code section 190.2 subdivision (a)(21) (§ 190.2(a)(21)),[1] intentional murder by discharging a firearm from a vehicle at another person with intent to kill, was also found true. Defendant was consequently sentenced to life without parole (LWOP). On appeal, defendant contends that the special circumstance established by section 190.2(a)(21) is unconstitutional both on its face and as applied "under the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment" of the United States Constitution. He contends that the special circumstance finding is therefore invalid, that his LWOP sentence must therefore be vacated, and that he must be resentenced to 25 years to life (which would allow the possibility of eventual parole.) We find section 190.2(a)(21) constitutional both on its face and as applied in this particular case, and hence affirm.

## I. *Background.*

Defendant and his victim encountered each other late at night in the parking lot of a convenience store. The victim had placed his car in a position blocking or impeding ingress to the parking lot. Defendant, driving a van and attempting to enter the parking lot, took umbrage at the obstacle created by the victim's car. An argument ensued between defendant (sitting in his van) and the victim (on foot outside the van). Evidence was presented that threats (including threats to kill), challenges, profanities, vulgarities, etc., flowed in both directions. After some minutes, the victim broke off the confrontation, entered his car and drove away into an alley behind the convenience store. The alley connected to nearby surface streets, and the victim apparently intended to enter the surface streets from the alley and leave the area. However, instead of allowing the confrontation to end, defendant chose to continue it. He circled his van into the same alley from the opposite direction. Defendant's van and the victim's car met in the alley behind the convenience store. They were observed stopped there for a short period, side by side, facing in opposite directions, driver's window to driver's window. Shots were fired, and defendant then turned off his headlights and drove off at a high rate of speed. The victim had been shot four times, and died soon afterward. Defendant ultimately admitted shooting the victim from defendant's van, which was consistent with the other evidence. Defendant contended that he shot out of fear that the victim was about to shoot him. Defendant claimed that movements by the victim made defendant believe that the victim was reaching for a gun. No gun was found on the victim or in his car, and there was no other evidence that the victim did have a gun (although the victim's car was moved after the shooting by his girlfriend, and it was consequently argued that she could have removed a gun from the car).

---

[1]All further statutory references are to the Penal Code.

The jury instructions allowed the jury to return a verdict of either first degree murder (on grounds of shooting out of a vehicle), second degree murder (on grounds of act dangerous to life),[2] manslaughter (on a sudden quarrel or heat of passion theory, or imperfect self-defense), or an acquittal on grounds of self-defense. The jury rejected defendant's claim of self-defense and convicted him of first degree murder, with the special circumstance finding of intentional murder by shooting out of a vehicle.[3] The People did not seek the death penalty, and defendant consequently received the LWOP sentence now under review.

The pertinent statutory scheme which underlies the instructions and the resulting LWOP sentence is as follows.

Section 189 establishes three categories of first degree murder.[4] It reads: "All murder which is perpetrated by means of a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by *any other kind* of wilful, deliberate, and premeditated killing, *or* which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 286, 288, 288a or 289 [certain sex crimes], *or* any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree." (Italics added.) Section 189 thus first establishes a category of first degree murder consisting of various types of premeditated killings, and specifies certain circumstances (use of explosives or armor-piercing ammunition, torture, etc.) which are deemed the equivalent of premeditation. Section 189 secondly establishes a category of first degree felony murders (murders perpetrated during felonies or attempted felonies such as arson, rape, carjacking, etc.). Finally, section 189 establishes a third

---

[2]A second degree murder finding, while perhaps unlikely, was theoretically possible if, for example, the jury found that defendant did an act dangerous to human life (shooting), but did not find the elements of intentionally shooting at the victim and intending to kill. (Cf. CALJIC Nos. 8.25.1 and 8.31.)

[3]Although it may appear likely that the jury would have, on these facts, found that defendant premeditated the murder (since defendant chased the victim into the alley and then shot him there), the jury was not asked to make any finding on premeditation and hence made none. As defendant points out, an appellate court cannot make such a factual finding on appeal.

[4]Part of defendant's argument of unconstitutionality is based on the fact that the factors which define the third category of first degree murder are the same factors which constitute the special circumstance found true in this case. Defendant also contends that the other special circumstances, many of which are similar or identical to the factors defining the first two categories of first degree murder, all require some level of premeditation. We set forth here all three categories of first degree murder as background for the discussion of defendant's contentions which follows, although only the third category was applied in this case.

category consisting of only one item, intentional murder by shooting out of a vehicle with intent to kill. The jury found first degree murder on this latter basis.

Section 190 specifies three possible penalties for first degree murder: "death, confinement in the state prison for life without the possibility of parole, or confinement in the state prison for a term of 25 years to life." The jury's first degree murder finding thus exposed defendant to one of these three penalties. The sentencing options were reduced from three to two in this case by the special circumstance finding under section 190.2. Section 190.2 lists 21 "special circumstances," and provides that "[t]he penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following special circumstances has been found under Section 190.4 to be true . . . ." The finding of a special circumstance thus eliminates the possibility of a 25-year-to-life sentence and leaves only the sentencing options of death or LWOP. ■ Section 190.2(a)(21) defines the special circumstance found true here: "The murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle with the intent to inflict death." This special circumstance is defined in the same terms as the third category of first degree murder defined in section 189. Read together, sections 189 and 190.2(a)(21) provide that any intentional murder committed by shooting out of a vehicle is punishable either by death or life without parole, but not by 25 years to life.[5]

Defendant initially suggests that section 190.2(a)(21) contains a constitutional infirmity simply because it duplicates the elements which defined defendant's murder as, or "elevated" it to, first degree murder by way of the third category defined in section 189. This suggestion, however, has already been decided to have no merit, and we therefore need not consider it further. (*Lowenfield* v. *Phelps* (1987) 484 U.S. 231 [108 S.Ct. 546, 98 L.Ed.2d 568], rehg. den. 485 U.S. 944 [108 S.Ct. 1126, 99 L.Ed.2d 286] [special circumstance of multiple murder may duplicate elements defining defendant's crime as first degree murder]; *People* v. *Edelbacher* (1989) 47 Cal.3d 983, 1023, fn. 12 [254 Cal.Rptr. 586, 766 P.2d 1] [rejecting suggestion of similar argument regarding "lying-in-wait" special circumstance].)

---

[5]A murder committed by deliberately performing an act dangerous to human life with conscious disregard for human life would not result in first degree murder and a special circumstance findings pursuant to sections 189 and 190.2(a)(21), but would instead be second degree murder. "When the killing is the direct result of such an act [an act dangerous to human life], it is not necessary to prove that the defendant intended that the act would result in the death of a human being." (CALJIC No. 8.31.) Sections 189 and 190.2(a)(21), by contrast, require that the shooting out of a vehicle be both "intentionally at another person" and· "with the intent to inflict death."

Defendant emphasizes his argument that section 190.2(a)(21) establishes an impermissible basis for death-eligibility. This argument is based on an asserted qualitative distinction between section 190.2(a)(21) and the other 20 special circumstances specified in section 190.2. Defendant argues that all the special circumstances listed in section 190.2—except for the "shooting out of a vehicle" special circumstance—concern situations in which some level of premeditation or prior criminal involvement is inherent. For example, murder for financial gain, murder by explosive, murder of a public official in retaliation for performance of official duties, murder while lying in wait, all types of felony murder, murder by torture or poison, etc., are all argued to require premeditation or prior criminal involvement. Murder by shooting out of a vehicle, however, need not necessarily be the product of premeditation, nor need it involve prior criminal activity of any kind (as felony murder does). Instead such a murder could be the product of sudden and spontaneous rage, occurring without premeditation and not occurring in connection with the commission (or attempt to commit) any felony.[6] Unpremeditated murder resulting from spontaneous rage is normally second degree murder. Nevertheless, when such an unpremeditated murder is perpetrated by shooting out of a vehicle, it is defined by the third category in section 189 as first degree murder, and the penalty is defined by section 190.2 as death or LWOP. Defendant thus argues that the special circumstance defined in section 190.2(a)(21), murder by shooting out of a vehicle with intent to kill, is qualitatively different than the other 20 special circumstances specified in section 190.2, because it covers unpremeditated murder. Defendant then argues that unpremeditated murder is an impermissible basis for death eligibility.

We need not resolve this precise issue, because the People did not seek death and defendant was not sentenced to death. If the People had sought death, a penalty phase would have followed the special circumstance finding. (See generally, 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, § 1592 et seq., p. 1898; §§ 190.3, 190.4.) In the penalty phase, defendant would have had an opportunity to present evidence concerning the circumstances of the crime, whether defendant was "under the influence of extreme mental or emotional disturbance," whether the defendant believed he was acting with justification or "extenuation," any "other circumstance which extenuates the gravity of the crime," etc. (§ 190.3.) If the jury, after hearing evidence of lack of premeditation, nevertheless chose to impose death, the issue of whether death eligibility is permissible in such circumstances would then be squarely presented. However, since death was neither sought nor imposed here, the issue is not

[6]The laws regarding carrying a firearm in a motor vehicle are considered below.

presently before us.[7] Accordingly, we focus our opinion on the question which is actually raised: Is section 190.2(a)(21) unconstitutional either facially or as applied in that the LWOP sentence imposed here violates either the Eighth Amendment or substantive due process under the Fourteenth Amendment? Defendant argues that section 190.2(a)(21) is unconstitutional because it is "overbroad" in including unpremeditated murders within its scope.

## II. *Section 190.2(a)(21) Is Not Facially Unconstitutional.*

### a. *The general rule of facial unconstitutionality.*

As a general rule, a statute is "facially unconstitutional" if it conflicts so directly with a constitutional provision that the statute is completely invalid and unenforceable in all circumstances. For example, if a statute were enacted providing that henceforth the government may commandeer private property for public purposes without compensation, the statute would be facially invalid because it would be in total conflict with the Fifth Amendment requirement of just compensation. Facial unconstitutionality normally requires wholesale infirmity of this kind. If the statute can be constitutionally applied in some instances, it is not facially invalid unless (possibly) a recognized exception (discussed below) applies.

The general rule of facial unconstitutionality was stated in *United States* v. *Salerno* (1987) 481 U.S. 739 [107 S.Ct. 2095, 95 L.Ed.2d 697] (*Salerno*): "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances exists under which the Act would be valid.* The fact that the [statute at issue in *Salerno*] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it ·wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." (*Id.* at p. 745 [107 S.Ct. at p. 2100] (lead opn. of Rehnquist, C. J.), italics added; see also *Reno* v. *Flores* (1993) 507 U.S. 292, 301 [113 S.Ct. 1439, 1446, 123 L.Ed.2d 1] ["To prevail in such a facial challenge, respondents 'must establish that no set of circumstances exists under which the [regulation] would be valid.' "]; *Keyishian* v. *Board of Regents* (1966) 385 U.S. 589, 594 [87 S.Ct. 675, 678, 17 L.Ed.2d 629] [noting that a law "capable of constitutional application" is not facially invalid].)

This basic rule was established long ago in *Yazoo & Miss. R. R.* v. *Jackson Vinegar Co.* (1912) 226 U.S. 217, 219-220 [33 S.Ct. 40, 41, 57 L.Ed. 193],

---

[7]Nor could it be, since the Supreme Court has exclusive appellate jurisdiction when a judgment of death is pronounced. (Cal. Const., art. VI, § 11.)

when the court rejected a claim of facial unconstitutionality based upon hypothetical facts which might, if they occurred, constitute constitutional violations. More recently, the general rule was elaborated in *Ada* v. *Guam Society of Obstetricians and Gynecologists* (1992) 506 U.S. 1011, 1012 [113 S.Ct. 633, 634, 121 L.Ed.2d 564] (*Ada*) (Justice Scalia, with Chief Justice Rehnquist and Justice White concurring, dissenting from a denial of certiorari) as follows: "The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative. To achieve the latter result, the plaintiff must succeed in challenging the statute 'on its face.' Our traditional rule has been, however, that a facial challenge must be rejected unless there exists *no set of circumstances* in which the statute can constitutionally be applied [citing *Salerno*]. . . . The only exception to this rule recognized in our jurisprudence is the facial challenge based upon First Amendment free-speech grounds. We have applied to statutes restricting speech a so-called 'overbreadth' doctrine, rendering such a statute invalid in all its applications (*i.e.,* facially invalid) if it is invalid in any of them. . . . [¶] [But in other contexts] [¶] [f]acial invalidation based on overbreadth impermissibly interferes with the state process of refining and limiting—through judicial decision or enforcement discretion—statutes that cannot be constitutionally applied in all cases covered by their language." (See also *Women's Medical Professional Corp.* v. *Voinovich* (6th Cir. 1997) 130 F.3d 187, 193 ["If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances."]; *United States* v. *Raines* (1960) 362 U.S. 17, 21-22 [80 S.Ct. 519, 523, 4 L.Ed.2d 524] [". . . one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional. . . . [A]pplication of this rule frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretation of statutes in areas where their constitutional application might be cloudy."].)[8]

---

[8]Here we consider a claim of facial unconstitutionality under the United States Constitution (the Eighth Amendment and the due process clause of the Fourteenth Amendment). However, the law regarding facial unconstitutionality is the same under the California Constitution. (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168 [172 Cal.Rptr. 487, 624 P.2d 1215].) The plaintiff in *Pacific Legal Foundation* contended that a statute regulating labor relations between the state and its employees conflicted on its face with the merit provisions of the civil service system in the state Constitution. The *Pacific Legal Foundation* court stated that the statute's challengers bore a "heavy burden in attempting to demonstrate that [the statute] is unconstitutional on its face[,]" (*Pacific Legal Foundation, supra,* 29 Cal.3d 168, 180, caption 2) and that "[i]n evaluating petitioners' contentions we must bear in mind that petitioners' instant challenge pertains to the constitutionality of the statute *on its face*. To

Thus the general rule is that a statute must be incapable of constitutional application in any circumstance in order for it to be found facially invalid.[9]

b. *Exceptions to the general rule.*

■ As noted in the quotations above, there are exceptions to the general rule. Defendant, arguing that the special circumstance created by section 190.2(a)(21) is unconstitutionally "overbroad" because it could encompass unpremeditated murder, implicitly argues that an exception to the

---

support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute, or as to particular terms of employment to which employees and employer may possibly agree. Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation, supra,* 29 Cal.3d 168, 180-181, italics in original; see also *Tobe* v. *City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145] [" ' "To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." ' "]; *Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 577 [20 Cal.Rptr.2d 341, 853 P.2d 507] ["[a] facial overbreadth challenge is difficult to sustain. . . . '[A]pplication of the overbreadth doctrine . . . is, manifestly, strong medicine. It has been employed . . . sparingly and only as a last resort.' "]; *People* v. *Mitchell* (1994) 30 Cal.App.4th 783, 802 [36 Cal.Rptr.2d 150] [quoting *Williams*]; *In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 48-49 [231 Cal.Rptr. 757] [The rules set forth in *Pacific Legal Foundation* are "formidable rules insulating a statute from facial attack"; if an appellate court can conceive of a situation in which a statute could be applied constitutionally, the statute will be upheld; unless the statute presents a "present total conflict with constitutional provisions," any overbreadth is cured through "case-by-case analysis of the fact situations to which the statute is applied."].)

[9]One commentator has criticized the general rule as set forth in *Salerno.* (Dorf, *Facial Challenges to State and Federal Statutes* (1993-1994) 46 Stan.L.Rev. 235, 239.) According to Professor Dorf, "[i]f *Salerno* really set forth the governing standard, however, litigants would rarely bring facial challenges. In the as-applied challenge, if the statute in question cannot be constitutionally applied to the litigant, then she will prevail without having to show that no set of circumstances exists under which the statute could be constitutionally applied to someone else. On the other hand, if the litigant loses her as-applied challenge, she will also lose her facial challenge under *Salerno* because the statute is constitutional in at least one circumstance. . . . Under *Salerno,* a litigant bringing a facial rather than an as-applied challenge gains nothing." The article both misses and illustrates the point of the general rule. The article implicitly assumes that an as-applied challenge is invariably easier to present than a facial challenge, although the reverse would likely be true in the case of a truly facially invalid statute, as is illustrated by the "just compensation" example given above. If a party can obtain a ruling of facial invalidity because of a clear conflict between a statute and a constitutional provision, or because an exception to the general rule applies, that party would be spared the burden of presenting detailed evidence of actual or possible applications of the statute. The opportunity for facial attack can consequently have significant practical value in litigation, despite the narrow application of the concept of facial unconstitutionality.

general rule applies here. However, examination of the reasons why exceptions have been created, and consideration of the types of issues which have led to the creation of exceptions, clearly shows that there is no basis for an exception in this case.

■ An impermissibly overbroad law (one that restricts or interferes with, or might possibly criminalize or penalize, the exercise of constitutionally protected rights) can create uncertainty which "chills" the exercise of those constitutional rights. In order to protect—and to avoid "chilling"—the legitimate exercise of constitutional rights, such a law may be found unconstitutional on its face (and hence completely invalid), even though it might be possible for it to operate constitutionally in some circumstances. As the above authorities mention, however, this "overbreadth doctrine" is applicable primarily (if not exclusively) only when First Amendment rights are implicated.

The reason for the overbreadth doctrine applicable to the United States Constitution was explained in *In re Marriage of Siller, supra,* 187 Cal.App.3d 36, 49, footnote 8: " '[A]lmost every law . . . is potentially applicable to constitutionally protected acts; that danger is not ordinarily thought to invalidate the law . . . but merely to invalidate its enforcement against protected activity. A plausible challenge to a law as *void for overbreadth* can be made only when (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory way of severing the law's constitutional from its unconstitutional applications so as to excise the latter clearly in a single step from the law's reach. [¶] In laws having these two characteristics, the usual approach of constitutional adjudication—gradually cutting away the unconstitutional aspects of a statute by invalidating its improper applications case by case—does not respond sufficiently to the peculiarly vulnerable character of activities protected by the first amendment. For an "overbroad law" . . . "hangs over [people's] heads like a Sword of Damocles." [Citation.] That judges will ultimately rescue those whose conduct in retrospect is held protected is not enough . . . . The resulting deterrent to protected speech is not effectively removed if "the contours of regulation would have to be hammered out case-by-case—and tested only by those hardy enough to risk criminal prosecution [or other sanctions] to determine the proper scope of regulation." [Citation.] The only solution . . . is to strike down such an overbroad law altogether . . . .' "

Thus the overbreadth doctrine applies to facial attacks based on the freedom of speech, freedom of the press, freedom of assembly, etc., clauses of the First Amendment. (See, e.g., *Salerno, supra,* 481 U.S. 739, 745 [107 S.Ct. 2095, 2100] ; *Ada, supra,* 506 U.S. 1011, 1012 [113 S.Ct. 633, 634].)

What might be termed a corollary of the "overbreadth" doctrine is the "prior restraint" doctrine which also protects the exercise of First Amendment rights. (See, e.g., *Lovell* v. *City of Griffin* (1938) 303 U.S. 444, 451 [58 S.Ct. 666, 668-669, 82 L.Ed. 949] [First Amendment case finding invalid on its face an ordinance prohibiting distribution of circulars without permission of city manager], and *Kunz* v. *New York* (1951) 340 U.S. 290, 293-295 [71 S.Ct. 312, 314-315, 95 L.Ed. 280] [First Amendment case finding invalid on its face as a prior restraint an ordinance giving a city official discretionary power to control in advance the right to speak on religious matters on the streets of New York].) A related exception applies to facial attacks based on the establishment clause of the First Amendment. (*Lemon* v. *Kurtzman* (1971) 403 U.S. 602 [91 S.Ct. 2105, 29 L.Ed.2d 745].)[10]

From sources such as these, much language about overbreadth and constitutional invalidity has entered the case law. However, the underlying rationale for the overbreadth doctrine has remained constant—overbroad statutes can "chill" the exercise of constitutional rights. Before the overbreadth doctrine can come into play, the challenged statute must imperil the exercise of a constitutionally protected right. The party asserting facial unconstitutionality and asserting an exception to the general rule must therefore identify the constitutionally protected activity which is allegedly being "chilled" by the assertedly overbroad statute. (Cf. 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 58, pp. 102-103 ["A legislative act is presumed to be constitutional. Unconstitutionality must be clearly shown, and doubts will be resolved in favor of its validity."]; see, e.g., *Reno* v. *Flores, supra,* 507 U.S. 292, 302 [113 S.Ct. 1439, 1447] [substantive due process analysis must begin with a "careful description of the asserted right," for the doctrine of judicial restraint requires care in breaking new ground].) ▮▮▮ As will be discussed next, no constitutional right—the exercise of which is imperiled by section 190.2(a)(21)—has been identified, and no overbreadth exception to the general rule of facial unconstitutionality, nor any analogous exception, can be found which applies to defendant's case.[11]

---

[10]Some might term the rule regarding establishment clause cases a rule of substantive law, but in any event it displaces the general rule of facial invalidity in establishment clause cases with the three-pronged *Lemon* test inquiring whether a statute lacks a "secular legislative purpose," whether its primary effect is to advance or inhibit religion, and whether it results in " 'excessive government entanglement with religion.' " (*Lemon* v. *Kurtzman, supra,* 403 U.S. 602, 612-613 [91 S.Ct. 2105, 2111].)

[11]There are other exceptions to the general rule under both state and federal law, but none are potentially applicable to defendant's Eighth Amendment and substantive due process challenges. For example, an exception applies to a facial due process attack on a criminal statute on grounds that the statute is too vague and uncertain to provide reasonable notice of what conduct is prohibited. (See, e.g., *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, 452-458

### c. *No exception to the general rule applies in this case.*

Defendant does not specify any constitutionally protected activity which might be "chilled" by the application of section 190.2(a)(21). There is, for example, no constitutionally protected right to shoot a firearm out of a motor vehicle, and defendant does not claim one. Defendant instead asserts that his "liberty interest" is involved, and asserts that section 190.2(a)(21) impermissibly impinges on this "liberty interest" by including unpremeditated murders, perpetrated by shooting out of a vehicle with intent to kill, within the scope of special circumstances justifying death or LWOP. Such "liberty interest" analysis might be germane if defendant were mounting a due process attack on section 190.2(a)(21) as impermissibly vague. (See, e.g., *Lanzetta* v. *New Jersey, supra,* 306 U.S. 451 and *Williams* v. *Garcetti, supra,* 5 Cal.4th at p. 570, fn. 6.) Here, however, defendant concedes that section 190.2(a)(21) is very clear. The conduct to which the statute applies is not in doubt. (Cf. the statute involved in *Lanzetta.*) No constitutionally protected activity which might be "chilled," and certainly no First Amendment activity, comes within the reach of section 190.2(a)(21). Moreover, the leading

---

[59 S.Ct. 618, 619-621, 83 L.Ed. 888] [due process case finding invalid on its face as vague and uncertain a penal statute punishing a "member of a gang" not engaged "in any lawful occupation" as a "gangster," and reversing conviction]; *Williams* v. *Garcetti, supra,* 5 Cal.4th 561 [criminal statute must be definite enough to provide a standard of conduct and a standard for police enforcement and ascertainment of guilt].) This exception is not involved here, since defendant forthrightly admits that the special circumstance statute under attack here is quite clear—intentional murder by shooting out of a vehicle will draw a sentence of either death or LWOP. Other exceptions may apply in other specialized circumstances. For example, debate continues in the United States Supreme Court regarding whether there is an exception to the general rule governing facial attacks on statutes concerning abortion. (Compare Justice Scalia's dissent from denial of certiorari in *Ada, supra,* 506 U.S. 1011 [contending that the general rule stated in *Salerno* applies] with Justice O'Connor's concurring opinion denying a stay in *Fargo Women's Health Organization* v. *Schafer* (1993) 507 U.S. 1013 [113 S.Ct. 1668, 123 L.Ed.2d 285] [contending that such facial attacks should be evaluated according to an "undue burden" standard]; see also *Planned Parenthood of Southeastern PA.* v. *Casey* (1992) 505 U.S. 833 [112 S.Ct. 2791, 120 L.Ed.2d 674] [holding abortion statute unconstitutional on its face if it operates as a substantial obstacle in a large fraction of cases]; *Women's Medical Professional Corp.* v. *Voinovich, supra,* 130 F.3d at p. 194 [*Casey* displaces *Salerno* in abortion context].) None of this facial unconstitutionality jurisprudence is germane to the instant case. Other exceptions exist under California law. Consistent with the federal overbreadth doctrine, these exceptions are also designed to avoid "chilling" the exercise of fundamental constitutional rights. (See, e.g., *American Academy of Pediatrics* v. *Lungren* (1997) 16 Cal.4th 307, 342-348 [66 Cal.Rptr.2d 210, 940 P.2d 797] [state constitutional right of privacy]; *Williams* v. *Garcetti, supra,* 5 Cal.4th 561, 577 [overbreadth doctrine protects against invasion of "protected freedoms"; protected freedom alleged was constitutional right of intimate family association]; *People* v. *Mitchell, supra,* 30 Cal.App.4th 783, 802 [overbreadth doctrine protects constitutionally protected freedoms].) Such exceptions are of course also inapplicable to defendant's situation, inasmuch defendant was not involved in exercising a constitutional right when he murdered his victim. Although we have conducted an independent search for an established exception which might apply to defendant's case, we have found none.

case on the limited nature of the general rule of facial unconstitutionality, *Salerno, supra,* 481 U.S. 739 was itself a case involving a "liberty interest." The statute involved in *Salerno* authorized pretrial detention on grounds of future dangerousness, yet the court found the statute subject to the general rule of facial constitutionality, and adjudicated the statute to be constitutional.

No applicable exception to the general rule has been identified here, and none can be found by independent inquiry. Thus defendant can succeed in his facial attack only by demonstrating that section 190.2(a)(21) cannot be constitutionally applied *under any circumstances.*

 d. *The "shooting out of a vehicle" special circumstance is not facially unconstitutional.*

Defendant argues simply that section 190.2(a)(21) is invalid because it is "unconstitutionally overinclusive on its face." Stating that a statute is merely "overinclusive," however, presupposes that parts of the statutory coverage have been properly included. Here, defendant recognizes that section 190.2(a)(21) could be constitutionally applied to "drive-by" shootings, stating that defendant "is not asking this Court to second-guess the wisdom of creating a drive-by special circumstance. The Legislative materials, and common knowledge, amply support a judgment that drive-by murders have become a widespread threat to public safety, and a statutory provision directed at deterring such conduct is fully within the power of the Legislature and the voters to adopt. [Defendant's] concern is the manner in which the language of the provision will inevitably be applied to reach conduct beyond the evil sought to be remedied . . . ." Defendant's forthright recognition that section 190.2(a)(21) can be constitutionally applied in at least some circumstances—at least in cases of "drive-by" shootings—necessarily refutes defendant's claim of facial invalidity unless an exception to the general rule applies. As the discussion above shows, no such exception applies. This is not a First Amendment case, the statute is not vague for due process purposes, defendant was not involved in exercising any constitutional right, there is no danger of "chilling" the exercise of constitutional rights by increasing the penalty for murder by shooting out of a vehicle, etc. Hence section 190.2(a)(21) is not unconstitutional on its face.

III. *The Application of Section 190.2(a)(21) in This Case Was Not Unconstitutional Under the Eighth Amendment.*

 Defendant challenges section 190.2(a)(21) "as applied" on the theory that "shooting from a vehicle is an overbroad basis for additional

punishment for intentional murder." Defendant points out that the jury's verdict is consistent with the interpretation that perhaps[12] defendant lost his temper and intentionally shot the victim in the heat of passion, but maybe the jury found insufficient provocation to mitigate the homicide to manslaughter. (Cf. CALJIC No. 8.42 [To reduce homicide from murder to manslaughter on grounds of heat of passion, the jury must find that the passion was "such a passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same circumstances."]) Defendant argues, in effect, that a sentence of LWOP for (what could theoretically have been) an unpremeditated murder is excessive under the Eighth Amendment.[13]

The cases do not support this contention. *Harmelin* v. *Michigan* (1991) 501 U.S. 957 [111 S.Ct. 2680, 115 L.Ed.2d 836], for example, upheld a sentence of LWOP for possession of 672 grams of cocaine, a serious crime, but less heinous than shooting a victim with intent to kill. In view of the *Harmelin* decision, it has been said that ". . . the length of a sentence of imprisonment is largely a matter of legislative prerogative, and cannot violate the Eighth Amendment in any but the rarest cases." (*People* v. *Weddle* (1991) 1 Cal.App.4th 1190, 1193 [2 Cal.Rptr.2d 714].)[14]

 Moreover, the case law suggests that even a sentence of death for intentionally shooting a victim with intent to kill would not violate the Eighth Amendment of the United States Constitution. Jurisdiction to determine the validity of a death sentence lies in the California Supreme Court, rather than in the Court of Appeal, and we therefore do not purport to decide that issue here. However, the cases bearing on the circumstances in which death is a permissible sentence inferentially also bear upon the LWOP sentence imposed here, for if death is a permissible sentence, it follows that an LWOP sentence cannot violate the Eighth Amendment.

The United States Supreme Court stated in *Cabana* v. *Bullock* (1986) 474 U.S. 376, 386 [106 S.Ct. 689, 697, 88 L.Ed.2d 704]: "The Eighth Amendment is satisfied so long as the death penalty is not imposed upon a person

---

[12]As noted, the People requested no finding as to premeditation, and the jury made none.

[13]As noted above, defendant actually argues that unpremeditated murder is an insufficient basis for death eligibility but, as explained above, that is not precisely the question presented on this record since defendant was not sentenced to death.

[14]California constitutional law is again similar. In *People* v. *Wingo* (1975) 14 Cal.3d 169, 174 [121 Cal.Rptr. 97, 534 P.2d 1001], for example, the court emphasized "the considerable burden a defendant must overcome in challenging a penalty as cruel or unusual. The doctrine of separation of powers is firmly entrenched in the law of California, and a court should not lightly encroach on matters which are uniquely in the domain of the Legislature. Perhaps foremost among these are the definition of crime and the determination of punishment. [Citations.] While these intrinsically legislative functions are circumscribed by the constitutional limits of article I, section 17 [the provision in the California Constitution banning cruel or unusual punishment], the validity of enactments will not be questioned 'unless their unconstitutionality clearly, positively, and unmistakably appears.' " (Fn. omitted.)

ineligible under *Enmund* [v. *Florida* (1982) 458 U.S. 782 [102 S.Ct. 3368, 73 L.Ed.2d 1140]] for such punishment. If a person sentenced to death in fact killed, attempted to kill, or intended to kill, the Eighth Amendment itself is not violated by his or her execution . . . ." The California Supreme Court, in overruling *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862],[15] interpreted *Cabana* as declaring "that the Eighth Amendment did not require intent to kill for the execution of the judgment of death—less still for the determination of death-eligibility." (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1140 [240 Cal.Rptr. 585, 742 P.2d 1306].) The same point was made "even more clearly" (*ibid.*) in *Tison* v. *Arizona* (1987) 481 U.S. 137, 158 [107 S.Ct. 1676, 1688, 95 L.Ed.2d 127], which held that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement."

The jury instructions in the instant case required a finding of intent to kill in order to find defendant guilty of first degree murder. (CALJIC No. 8.25.1 ["Murder . . . perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person . . . when the perpetrator specifically intended to inflict death, is murder of the first degree."].) Under the instructions given, a finding of first degree murder was a prerequisite to consideration of the allegation of special circumstance. (CALJIC No. 8.80.1 ["If you find the defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true . . . ."].) The special circumstance reiterates the requirement of intent to kill. (§ 190.2(a)(21) and CALJIC No. 8.81.21 [Jury must find that the "perpetrator, at the time he discharged the firearm, intended to inflict death."].)

Hence the jury here necessarily found that defendant intended to kill. *Cabana, Anderson* and *Tison* suggest that even the death penalty would be constitutional in the situation of intentional murder by shooting out of a vehicle. It follows from these cases that a sentence of LWOP does not violate the Eighth Amendment. Hence the application of section 190.2(a)(21) in this case was not unconstitutional under the Eighth Amendment.

IV. *The Application of Section 190.2(a)(21) in This Case Was Not Unconstitutional as Violative of Substantive Due Process Under the Fourteenth Amendment.*

a. *The law of substantive due process.*

██ Defendant also contends that section 190.2(a)(21), as applied in this case, violates substantive due process under the Fourteenth Amendment

---

[15]*Carlos* had mistakenly held that a finding of intent to kill was necessary to support a special circumstance finding.

"because it reaches conduct that does not rationally relate to the purpose of the statutory provision"—another reference to the fact that section 190.2(a)(21) encompasses unpremeditated murders. ■ The term "substantive due process" refers to a line of disparate cases which generally concludes that the guaranty of due process in the Fifth and Fourteenth Amendments includes a "substantive" component that restricts infringement upon certain fundamental "liberty interests." (See, e.g., *Reno* v. *Flores*, *supra*, 507 U.S. 292, 301 [113 S.Ct. 1439, 1447].) The substantive due process doctrine thus acts as a limitation on unreasonable and arbitrary legislation. (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 481, p. 668; *People* v. *Kilborn* (1996) 41 Cal.App.4th 1325, 1328 [49 Cal.Rptr.2d 152] [" 'deprivation of a right is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation that is reasonably applied; that is, the law must have a reasonable and substantial relation to the object sought to be attained.' "].) The concept of "substantive due process" is slippery in its application. "[T]he notions of fairness and reasonableness which make up the content of substantive due process . . . are too general to offer any definite test . . . ." (8 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, § 791, p. 319.) With no definite test to determine whether a statute satisfies the "notions of fairness" which populate the concept of "substantive due process," and no definite test to determine whether a statute is "unreasonable" or "arbitrary," courts must proceed cautiously so as not to overstep the boundaries of separation of powers. Thus " '[s]ubstantive due process' analysis must begin with a careful description of the asserted right [allegedly infringed upon], for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.' " (*Reno* v. *Flores*, *supra*, 507 U.S. at p. 302 [113 S.Ct. at p. 1447].) " '. . . a Legislature does not violate due process so long as an enactment is . . . reasonably related to a proper legislative goal. The wisdom of the legislation is not at issue in analyzing its constitutionality, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute.' " (*People* v. *Kilborn*, *supra*, 41 Cal.App.4th at p. 1329, quoting from *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512].)

b. *Missing links in defendant's arguments.*

■ Defendant here alleges a substantive due process right to be sentenced to only 25 years to life (with the possibility of parole), or to a lesser sentence, for an intentional, but perhaps not premeditated, murder. However, as has been discussed above in connection with defendant's Eighth Amendment claim, ". . . the length of a sentence of imprisonment is largely a

matter of legislative prerogative . . . ." (*People* v. *Weddle, supra,* 1 Cal.App.4th at p. 1193; see also *People* v. *Wingo, supra,* 14 Cal.3d at p. 184, fn. 14 [determination of punishment uniquely the domain of the Legislature].) The cases have approved longer sentences for less serious crimes than intentional murder. Defendant identifies no origin for his asserted constitutional right to a shorter sentence, and we can find none. (Cf. *U.S.* v. *McDougherty* (9th Cir. 1990) 920 F.2d 569, 572 [sentence enhancement did not implicate a fundamental right for purposes of equal protection analysis].)

In a somewhat more supportable but still similar vein, defendant declares as the narrowly limited purpose for section 190.2(a)(21)—the purpose against which the rationality of the statute must be measured for substantive due process purposes—solely deterrence of gang-related "drive-by" shootings. The record does reflect that this is one core purpose, but does not reflect that this is the only purpose. The statute is not drafted to limit its reach to this purpose alone, even though the Legislature could easily have done so. Instead, the statute is drafted more broadly to increase the punishment for any intentional murder perpetrated by shooting out of a vehicle with intent to kill. This more-inclusive structure is the very characteristic of the statute which defendant attacks, yet this same characteristic tends to defeat defendant's substantive due process claim by indicating a legislative purpose broader than that argued for by defendant. No convincing basis is presented for the proposition that the legislative intent did not extend to "road rage" murders (of which the instant case is arguably an example), or other murders perpetrated by shooting out of a vehicle. (Cf. *People* v. *Bostick* (1996) 46 Cal.App.4th 287 [53 Cal.Rptr.2d 760] [street safety found as goal of statute imposing enhancement for shooting out of a vehicle].)

When the legislative objective is broader, a broader scope of coverage is rational. The burden lies on defendant to demonstrate the unconstitutionality of the statute he attacks. (Cf. 7 Witkin, Summary of Cal. Law, *supra,* Constitutional Law, § 58, pp. 102-103 ["A legislative act is presumed to be constitutional. Unconstitutionality must be clearly shown, and doubts will be resolved in favor of its validity. . . ."].) Hence the burden lies on defendant to establish the limited legislative purpose upon which his argument depends. This he has been unable to do.

Hence defendant's substantive due process argument commences on a doubly infirm constitutional footing because (1) it does not clearly identify a constitutional right being infringed, and (2) it does not establish the limited legislative purpose his argument relies upon.

c. *The deterrence argument.*

Defendant argues that "[f]rom the perspective of deterrence, criminalizing the mere fact of being in a car at the time of an offense is irrational when

applied to crimes of passion. The provision only deters persons who choose to employ a vehicle in the perpetration of an offense. It has no deterrent effect on persons who are already in a vehicle when the specific intent to commit murder suddenly arises." Assuming that a purpose of deterrence is necessary for satisfaction of substantive due process—a proposition not established here—a deterrent purpose amply rational to survive due process review is served by section 190.2(a)(21).

A person in a motor vehicle simply cannot commit a murder by shooting out of the vehicle, not even a spontaneous and unpremeditated murder, unless that person has a loaded firearm in the vehicle. The Legislature can rationally decide, as a matter of public policy, to discourage the practice of carrying loaded firearms in vehicles by placing those who do so on notice that misuse of that firearm in these circumstances can lead to increased punishment. (See, e.g., § 12022.55 [sentence enhancement for shooting out of vehicle]; cf. *People* v. *Bostick, supra*, 46 Cal.App.4th 287 [applying § 12022.55].) Whether a legislative goal of discouraging the carrying of loaded firearms in vehicles is wise or unwise is not an issue for judicial review.

In most situations, the Legislature has already declared the unauthorized carrying of a loaded firearm in a vehicle to be a crime. (§ 12031 [carrying a loaded firearm in a vehicle in any public place or on any public street in an incorporated city or in a prohibited area of unincorporated territory is either a felony or a misdemeanor, depending on the circumstances and the record of the defendant].)[16] Although it may be tautologically true that it is not possible to deter *spontaneous* crimes in the sense of inducing potential criminals to think before *spontaneously* acting, it may be possible to discourage the carrying of a loaded firearm in a vehicle or to impress upon those who do carry loaded firearms the need to be cautious about their use. The instant case is a particularly egregious example of why the Legislature might want to discourage loaded firearms in vehicles. Defendant in the instant case had twice previously been convicted of assault with a firearm in violation of section 245, subdivision (a)(2). Pursuant to section 12031, subdivision (a)(2)(A), it was consequently a felony for defendant merely to have a loaded firearm with him in his vehicle in a public place in the City of Los Angeles, where the murder occurred. Defendant nevertheless obviously had with him the loaded firearm without which this murder could not have occurred. From "the perspective of deterrence" raised by defendant, increasing the penalty for murder by shooting out of a vehicle could deter the unlawful carrying of loaded firearms in vehicles, and could encourage even

---

[16]Subject to exceptions for specified individuals, or in situations of immediate grave danger, etc. (§ 12031, subd. (b) et seq.)

those carrying loaded firearms legally to be circumspect in their use (for example, not being quick to point them at anyone unless under immediate threat). Whether such a public policy is considered wise or not, it cannot be considered an irrational public policy objective. The Legislature may hence make this choice, and the courts may not properly interfere.[17]

### d. The "instrumentality" argument.

Another aspect of defendant's argument regarding inclusion of unpremeditated murders within the scope of section 190.2(a)(21) concerns the lack of any requirement for proof that a defendant intentionally used the vehicle as an "instrumentality" of the crime. Defendant argues that if gang members deliberately choose to use a vehicle to commit a "drive-by" shooting, the vehicle has been used as an "instrumentality" of the crime, and a finding that the vehicle was used as an "instrumentality" of the crime establishes premeditation. Defendant cites statutes from other states which contain the "instrumentality" element. Without such a finding, defendant argues, it could be "mere happenstance" that a defendant happened to be in a vehicle at the time he lost his temper and shot someone with the intent to kill. (Cf. *People v. Bostick, supra,* 46 Cal.App.4th at p. 296, fn. 5 (conc. opn. of Kline, P. J.) [Enhancement for shooting out of vehicle may be overbroad because of "facial applicability to shootings in which the defendant's presence in a car was mere happenstance."].) If it is "mere happenstance" or a mere coincidence, argues defendant, punishing such conduct more severely is irrational.

This argument is initially refuted by the discussion above concerning the rationality of a public policy seeking to discourage the carrying of loaded firearms in vehicles. In addition, however, there are other legitimate and rational legislative purposes to be served by not adding the "instrumentality" element to the special circumstance defined in section 190.2(a)(21). One is that if the "instrumentality" element were present, it is expectable that every prosecution for a gang-perpetrated "drive-by" shooting would be met with the contention that there had been no intent to kill when the gang members first entered the vehicle with their firearms, but that instead such intent arose only later when—by "mere happenstance"—they encountered their hated

---

[17]There are places where it is lawful to carry a loaded firearm in a vehicle, such as certain portions of unincorporated territory (see § 12031, subd. (a)(1)), but even assuming that this factor might in some circumstances be relevant to the constitutionality of the statute, it does not aid defendant's "as applied" substantive due process attack, since he was convicted of murder by shooting out of a vehicle in an incorporated city where carrying the firearm was illegal. Moreover, he was committing a felony simply by carrying the loaded firearm in view of his record.

enemy on the street, flew into a rage, and shot him dead. Litigating such claims is uncertain, expensive and time consuming, and the Legislature is under no constitutional obligation to provide the benefit of such a defensive element. Instead, this is a matter of legislative choice. Another legitimate legislative purpose in not including the "instrumentality" element is that it would raise similar issues in "road rage" murders. The Legislature could constitutionally find a bright line rule best in this situation, and choose not to inject the "instrumentality" element into such cases.

### e. *People v. Bostick.*

Defendant forthrightly acknowledges that the prime impetus for his substantive due process attack is Justice Kline's concurring opinion in *People* v. *Bostick, supra,* 46 Cal.App.4th 287. In *Bostick,* the court upheld a sentence enhancement pursuant to section 12022.55, which prescribes an additional term of imprisonment for shooting out of a vehicle. In concurring, however, Justice Kline noted that the defendant in *Bostick* had "staked his appeal on questions of statutory construction and not [on] any claim that the statute may be unconstitutional on its face or as applied to him. He does not contend, for instance, that the statute is fatally overinclusive for punishing conduct not within the apparent legislative purpose, or is underinclusive for excluding conduct which may appear materially indistinguishable from included conduct. (See *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 876-877 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]; cf. *United States* v. *McDougherty*[, *supra,*] 920 F.2d 569, 572 [federal enhancement for distribution of drugs within 1,000 feet of elementary school]; *United States* v. *Thornton* (9th Cir. 1990) 901 F.2d 738, 740 [same].) Overinclusiveness may or may not appear in the statute's facial applicability to shootings in which the defendant's presence in a car was mere happenstance." (*Bostick, supra,* 46 Cal.App.4th at p. 296, fn. 5 (conc. opn. of Kline, P. J.).) Defendant now advances an "overinclusiveness" attack on section 190.2(a)(21), arguing that his presence in a vehicle when he committed murder was "mere happenstance," and relying heavily on Justice Kline's concurrence in *Bostick.*

Defendant's reliance appears misplaced, inasmuch as Justice Kline's comments about overinclusiveness and underinclusiveness appear directed more toward questions of equal protection than substantive due process.[18] In the first case cited by Justice Kline (*Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]), Justice Tobriner applied an intrusive equal protection analysis to rule that the automobile guest statute

---

[18]Defendant has not attacked section 190.2(a)(21) on equal protection grounds.

was "irrational," and hence unconstitutional.[19] In the other two cases (*United States* v. *McDougherty*, *supra*, 920 F.2d 569, and *United States* v. *Thornton* (9th Cir. 1990) 901 F.2d 738), the Ninth Circuit applied a more mainstream equal protection analysis to uphold the drug law there under review, finding that it neither targeted a "suspect class" nor impinged upon a "fundamental right" (even though the law increased the defendant's punishment, just as section 190.2(a)(21) does). The Ninth Circuit hence found that rational basis analysis, rather than strict scrutiny analysis, applied, and that the statute was rational. The law under review in the instant case, section 190.2(a)(21), similarly targets no identifiable suspect class, nor impinges upon any identifiable fundamental right. It merely increases a penalty, just as did the law under review in *McDougherty* and *Thornton*. Hence strict scrutiny would not apply, and the law is rational both for the reasons discussed above and for reasons cited in *Bostick*. As the majority stated in *Bostick*, "firing a gun from a motor vehicle is an especially treacherous and cowardly crime. It allows the perpetrator to take the victim by surprise and make a quick escape to avoid apprehension, as illustrated by the facts here. The Legislature could rationally have determined that the foregoing considerations justify imposing an increased sentence on the perpetrator." (*People* v. *Bostick*, *supra*, 46 Cal.App.4th at p. 292.) Justice Kline's concurrence also recognized the rational grounding for a law increasing the penalty for shooting out of a vehicle, noting that ". . . a vehicle provides a redoubt that might facilitate the commission of criminal acts even if it is not at that moment being used for transportation." (*Id.* at p. 296 (conc. opn. of Kline, P. J.).) *Bostick* thus supports the proposition that section 190.2(a)(21) is rational and hence constitutional as applied in this case.

### f. *Conclusion as to substantive due process.*

The rather nebulous and elastic "notions of fairness" which form the concept of substantive due process provide fertile opportunity for argumentation, and defendant has taken skillful advantage of that opportunity here. Statutes, however, are presumed constitutional, and the party attacking their constitutionality therefore bears the burden of demonstrating the constitutional infirmity. As Witkin notes, the concept of substantive due process is "too general to offer any definite test." (8 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, § 791, p. 319.) The indistinct outline of the concept of substantive due process creates a distinct danger of aberration beyond the boundaries of the judicial function. Courts must therefore exercise restraint to avoid improper interference with proper legislative determinations. (See, e.g., *Reno* v. *Flores*, *supra*, 507 U.S. at p. 301 [113 S.Ct. at p.

---

[19]The analysis applied in *Brown* is probably obsolete under more recent case law which makes clear that constitutional "rationality" analysis cannot properly be used simply to substitute judicial judgment for legislative judgment.

1446].) In the final analysis, the statute under review here is supported by the proper legislative purpose of reducing firearm carnage, particularly on the streets, and the increased punishment imposed for such conduct is rationally related to that broad purpose. No violation of substantive due process has been demonstrated.

### V. *The Abstract of Judgment.*

The People have requested a correction in the abstract of judgment to reflect the sentence actually imposed, life without parole, which is the legally correct sentence and the sentence reflected in the reporter's transcript and the clerk's transcript. The abstract erroneously reflects life with the possibility of parole. Defendant does not contest that the actual sentence was LWOP. Accordingly, we will order correction of the abstract.

### VI. *Disposition.*

The abstract of judgment is ordered corrected to reflect that defendant (appellant) was sentenced to a term of life imprisonment without the possibility of parole. The superior court is ordered to forward a certified copy of the corrected abstract to the Department of Corrections. In all other respects, the judgment is affirmed.

Fukuto, Acting P. J., and Nott, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 24, 1998. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.