Filed 5/9/13  P. v. Guillen CA2/2
Opinion following remand by U. S. Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B220310 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA341171) |
| JOSE GUILLEN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert J. Perry, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

When defendant and appellant Jose Guillen (defendant or Guillen) was 17 years old, he and three adults committed an armed robbery during which defendant personally shot and killed one of the two victims. A jury convicted him of first degree special circumstance murder, and in 2009, the trial court sentenced him to life without the possibility of parole (LWOP). We affirmed the judgment and the California Supreme Court denied review. The United States Supreme Court thereafter granted defendant's petition for writ of certiorari, vacated his judgment, and remanded the case to this court for further consideration in light of *Miller v. Alabama* (2012) 567 U.S. __ [132 S.Ct. 2455] (*Miller*). (*Guillen v. California* (2012) 567 U.S. __ [133 S.Ct. 69].)[1]

On remand, we adopt and incorporate our opinion in *Aleman I*, including the analysis and conclusions as to defendant's contentions made in the original briefing, with the exception of the argument that the Eighth Amendment to the United States Constitution prohibits an LWOP sentence under the circumstances of this case. We now reconsider that contention in light of *Miller*, and again conclude that defendant's sentence did not violate the Eighth Amendment. We affirm the judgment.

## BACKGROUND

The following evidence, facts, and procedural history are summarized from our opinion in *Aleman I*, where they are set forth in detail and need not be repeated at length.

Guillen was convicted of the first degree special circumstance murder and robbery of Efrain Leyva (Leyva), the robbery of Maria Sawyer (Sawyer), and burglary. He was sentenced to LWOP in addition to a consecutive firearm enhancement of 25 years to life, plus a consecutive five-year term for the robbery of Sawyer and a further consecutive term of 25 years to life for the use of a firearm. The trial court imposed and stayed sentences as to counts 3 and 4, as well as the remaining firearm enhancements.

---

[1] Although defendant and codefendant Pedro Reyes (Reyes) had been tried separately from accomplices Alvaro Aleman (Aleman), and Elvis Jimenez (Jimenez), their appeals were consolidated, and we affirmed the judgments in a nonpublished opinion, *People v. Aleman* (Aug. 29, 2011, B220310) (*Aleman I*). The remittitur pertains only to defendant Guillen, and the judgments against Aleman, Reyes, and Jimenez remain final.

2

The evidence at trial established that Guillen, Reyes, Aleman, and Jimenez entered Leyva's store while it was open, hid behind merchandise until it closed, and then robbed Leyva and his employee Sawyer at gunpoint as they were counting the day's receipts. Surveillance cameras recorded much of the crime. One video shows Guillen standing guard with a firearm over Leyva outside the store's office while the defendant's companions gathered money. After Leyva gestured several times toward the office, Guillen is seen shooting Leyva in the leg, causing Leyva to squat or sit and cease moving around. The video then shows Guillen make a cell phone call, after which he holds the unresisting Leyva by the shirt, puts the gun close to Leyva's head, and fires. Although Leyva's death was directly caused by the gunshot wound to his head, the bullet fired earlier into Leyva's leg would also have been fatal, as it passed through an artery and a vein.

Defendant was shot in the leg during the robbery.[2] After their escape, Aleman took defendant to a hospital emergency room, where they were both arrested. Defendant twice admitted to detectives, including Detective Miguel Terrazas, that he shot Leyva, but defendant testified at trial that Reyes had fired the fatal shot. Defendant claimed that he confessed only because Reyes otherwise refused to allow him to go to the hospital, and because Reyes threatened to kill defendant and his family if he did not take complete responsibility. However, when the prosecutor showed the surveillance video in which defendant was seen shooting Leyva and limping away, defendant identified Jimenez as the person shooting Leyva and denied that he was the shooter that was limping in the video. Defendant testified that Reyes and another gang member had told him to commit the robbery.

---

[2] Defendant testified that Jimenez shot him because defendant refused to shoot the victim. However, it appears from the surveillance video that defendant's gunshot wound may have been caused by accidental gunfire, and it is apparent in the video that defendant did not refuse to shoot the victim, rather he shot Leyva two times.

3

In rebuttal, Detective Terrazas testified that defendant did not claim that he acted under duress during their discussion. He also testified that Jimenez had no limp and required no medical attention after his arrest 8 to 10 days after the robbery.

## DISCUSSION

In *Aleman I*, defendant contended that, as applied to him, a life term without the possibility of parole violated both the Eighth Amendment to the United States Constitution, as well as article 1, section 17 of the California Constitution, which prohibit cruel or unusual punishment.

The United States Supreme Court had determined that a sentence was not cruel or unusual or violative of the Eighth Amendment so long as the ultimate punishment was not grossly disproportionate to the crime, prior to *Aleman I*. (*Solem v. Helm* (1983) 463 U.S. 277, 288-289.) The court had however, identified one type of categorically disproportionate sentence for defendants who were juveniles at the time they committed the crimes for which they were sentenced. In *Roper v. Simmons* (2005) 543 U.S. 551, 578-579 (*Roper*), the court held that the Eighth Amendment bars capital punishment for minors, even for murder. After defendant was sentenced in this case, but before his conviction was affirmed on appeal, the court issued its opinion in *Graham v. Florida* (2010) 560 U.S. ___ [130 S.Ct. 2011] (*Graham*), in which it held that the Eighth Amendment categorically bars LWOP for minors who commit nonhomicide offenses. As neither of these types of sentence applied to defendant's case, his LWOP sentence was not categorically barred. Further, under the state of the law at that time, an individualized proportionality review for a sentence less than death was not required, unless the punishment gave rise to an inference that it was grossly disproportionate to the crime. (*Harmelin v. Michigan* (1991) 501 U.S. 957, 995-996.)

We nevertheless conducted an individualized proportionality review as required by the California Constitution, to determine whether defendant's sentence was "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted (*Lynch*).) We considered the nature of the offense and the offender under the

4

analysis suggested in *Lynch* and *People v. Dillon* (1983) 34 Cal.3d 441, 479 (*Dillon*). Regarding the nature of the offender, the only facts cited by defendant in the trial court were his young age and the absence of a criminal record. We measured those facts against the deliberate and premeditated murder of the cooperative and incapacitated victim which the trial court found "gratuitous" and "exceptionally cruel." We concluded that the LWOP sentence was not so disproportionate to the crime as to violate the California Constitution or the Eighth Amendment.

The Supreme Court then published *Miller* in which it concluded that the Eighth Amendment bars *mandatory* LWOP sentences for minors, even those who commit murder. (*Miller*, *supra*, 132 S.Ct. at p. 2464.) Synthesizing its reasoning in *Graham* and *Roper*, the Supreme Court explained that immaturity and an underdeveloped sense of responsibility gave children a tendency toward "recklessness, impulsivity, heedless risk-taking"; they are "'more vulnerable . . . to negative influences and outside pressures'"; "have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings. [Citation.] And . . . a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].' [Citation.]" (*Miller*, *supra*, 132 S.Ct. at p. 2464.) The court concluded that "imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children"; and sentencing courts must "have the ability to consider the 'mitigating qualities of youth.' [Citation.]" (*Id*. at pp. 2466-2467.) The court therefore held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. [Citation.]" (*Id*. at p. 2469.)

The *Miller* holding was limited: "'A State is not required to guarantee eventual freedom,' but must provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" (*Miller*, *supra*, 132 S.Ct. at p. 2469.)

Respondent contends that the recent amendment to Penal Code section 1170[3] does just that and thus renders defendant's constitutional challenge moot.

With exceptions not applicable here, section 1170, subdivision (d)(2), applies retroactively to permit a defendant who was sentenced to LWOP for a crime committed as a juvenile, to apply for resentencing after serving at least 15 years of the sentence based upon enumerated factors demonstrating his rehabilitation or potential for rehabilitation. That provision affects defendant 15 years in the future; however, where *Miller* is applicable, "the state may not deprive [juvenile offenders] *at sentencing* of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future." (*People v. Caballero* (2012) 55 Cal.4th 262, 268-269 (*Caballero*), italics added.)

Thus, as defendant essentially contends he was sentenced under an unconstitutional statute, and as section 1170, subdivision (d)(2) would not prevent a finding here that his LWOP sentence was invalid at its inception, his challenge is not moot. (See *In re Sodersten* (2007) 146 Cal.App.4th 1163, 1217.)

Defendant was sentenced under section 190.5, subdivision (b): "The penalty for a defendant found guilty of [first degree special circumstance] murder . . . , who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, *at the discretion of the court, 25 years to life*." (Italics added.) As section 190.5 does not expressly mandate LWOP for juvenile offenders and as there is no language in the statute limiting the factors the sentencing court may consider in exercising its discretion, we conclude that it is not unconstitutional on its face. (See *People v. Rodriguez* (1998) 66 Cal.App.4th 157, 166 [a statute capable of constitutional application is not facially invalid].)

Defendant contends that although section 190.5 gave the trial court discretion to sentence him to less than LWOP, an LWOP sentence was nevertheless mandatory and

---

[3] All further statutory references are to the Penal Code unless otherwise indicated.

therefore invalid under *Miller's* prohibition against statutes mandating LWOP for juvenile offenders. Defendant's reasoning is based upon language in a pre-*Miller* appellate court decision which construed section 190.5 as making LWOP the "statutory preference" and "presumptive punishment" and thus, "generally mandatory." (*People v. Guinn* (1994) 28 Cal.App.4th 1130, 1142 (*Guinn*); accord, *People v. Ybarra* (2008) 166 Cal.App.4th 1069 (*Ybarra*).) Defendant suggests that this construction of section 190.5 violates *Miller's* dictate that the sentencing court "follow a certain process -- [by] considering an offender's youth and attendant characteristics -- before imposing [LWOP]." (*Miller, supra*, 132 S.Ct. at p. 2471.)

When read in context, however, the terms used in *Guinn* and quoted in *Ybarra* do not preclude a reasoned consideration of the defendant's youth or its attendant characteristics. The *Guinn* court described the statute as "generally mandatory" in order to counter a contention that the statute was unconstitutional because it did not contain specific guidelines; it explained that the implied preference for LWOP circumscribed the court's discretion to the extent that it was not free to act arbitrarily or capriciously, but was instead required to apply "sensible criteria" to its exercise of discretion, such as existing factors stated in the California Rules of Court, rule 4.423, and Penal Code section 190.3.[4] (*Guinn, supra*, 28 Cal.App.4th at pp. 1141-1143.)

Indeed, the *Guinn* court recognized that the statute allows the sentencing courts to grant juvenile murderers more lenient treatment, and acknowledged that a statutory preference for LWOP did not prevent defense counsel from offering, or the trial court from considering, "evidence in mitigation at the sentence hearing [or] evidence of [the defendant's] personal background and circumstances, through a report and testimony of a psychologist, as well as the testimony of defendant's father and defendant's girlfriend in his behalf." (*Guinn, supra*, 28 Cal.App.4th at p. 1144.)

---

[4]    Section 190.3 guides the decision to impose the death penalty or LWOP, and provides that any relevant factor must be considered, including the defendant's character, background, history, mental condition and physical condition.

Nor did the trial court refuse to consider defendant's youth or its attendant characteristics in this case. The court made no mention of *Guinn* or *Ybarra* and gave no indication that it believed its discretion was limited. The court heard defendant's motion under section 190.5, and expressly recognized that it could impose a lesser sentence. Defendant presented no mitigating facts to support his section 190.5 motion other than his age and absence of a prior criminal record.

Defendant nevertheless suggests that the trial court applied the statute in an unconstitutional manner because the sentencing court did not consider factors set forth in *Miller* relating to the offender's immaturity, such as his upbringing, mental and emotional development, impetuosity, ability to appreciate risks and consequences, and his potential for rehabilitation. (See *Miller, supra*, 132 S.Ct. at pp. 2464-2465, 2468-2469.) Defendant suggests that resentencing is required in all pre-*Miller* juvenile LWOP cases in which the sentencing court did not have the benefit of *Miller's* definition of the appropriate and lawful scope of its discretion and thus did not conduct an individualized analysis of the suggested factors.

To support his suggestion, defendant relies on *Caballero*, *People v. Thomas* (2012) 211 Cal.App.4th 987 (*Thomas*), and *People v. Argeta* (2012) 210 Cal.App.4th 1478 (*Argeta*).[5] In *Caballero*, the California Supreme Court followed the reasoning of *Miller* to hold a cumulative sentence of 110 years to life for attempted murder committed by a juvenile was the "functional equivalent of a life without parole sentence" and thus categorically barred under *Graham* as it was not a murder case. (*Caballero, supra*, 55 Cal.4th at pp. 267-268.) The court expressly left "*Miller*'s application in the homicide context to a case that poses the issue." (*Caballero*, at p. 268, fn. 4.) The court ruled that

---

[5]    In addition, defendant relies on *People v. Siackasorn* (2012) 211 Cal.App.4th 909, review granted March 20, 2013, S207973, which considered the application of *Miller* to an LWOP sentence for a first degree special circumstance murder personally committed by the defendant. That case offers no guidance here, as review has been granted, as it has with other recently published opinions considering LWOP in light of *Miller*. (See, e.g., *People v. Moffett* (2012) 209 Cal.App.4th 1465, review granted Jan. 03, 2013, S206771 and *People v. Gutierrez* (2012) 209 Cal.App.4th 646, review granted Jan. 03, 2013, S206365.)

in nonhomicide cases, either upon sentencing or pursuant to a defendant's petition for habeas corpus, "the sentencing court must consider all mitigating circumstances attendant in the juvenile's crime and life, including but not limited to his or her chronological age at the time of the crime, whether the juvenile offender was a direct perpetrator or an aider and abettor, and his or her physical and mental development, so that it can impose a time when the juvenile offender will be able to seek parole from the parole board [which] will then determine whether the juvenile offender must be released from prison 'based on demonstrated maturity and rehabilitation.' [Citation.]" (*Id*. at pp. 268-269.)

*Caballero*'s reasoning was extended to sentences for murder in *Thomas* and *Argeta*, where the appellate court in each case ordered resentencing, because the trial court had not considered the *Caballero/Miller* factors due to a mistaken belief that cumulative sentences totaling more than 100 years were not the equivalent of LWOP. (*Thomas*, *supra*, 211 Cal.App.4th at pp. 1015-1016; *Argeta*, *supra*, 210 Cal.App.4th at p. 1482.) Neither *Caballero*, *Thomas*, nor *Argeta* held that section 190.5 was facially invalid under *Miller* or that all pre-*Miller* juvenile LWOP sentences must be reversed. Unlike defendant here, the defendants in *Caballero*, *Thomas*, and *Argeta* had not been sentenced under section 190.5, which expressly requires the trial court to exercise its discretion to consider a lesser sentence.

The sentencing court in this case was not under a misapprehension that it could not exercise its discretion under section 190.5. Nor did the trial court express a belief that it could not consider defendant's upbringing, mental and emotional development, impetuosity, ability to appreciate risks and consequences, or his potential for rehabilitation. Finally, there is no indication in this record that the trial court excluded any proffered evidence of defendant's character, background, history, mental condition, or physical condition.

Had defendant presented such evidence, the court would have been required to consider such. (*Guinn*, *supra*, 28 Cal.App.4th at pp. 1141-1143; *Ybarra*, *supra*, 166 Cal.App.4th at p. 1089; see Cal. Rules of Court, rule 4.423; § 190.3.) Indeed, years before defendant was sentenced in this case, the California Supreme Court held that a

9

proportionate sentence for youthful offenders should include a consideration of such factors as age, prior criminality, personal characteristics, individual potential, and state of mind. (See *Dillon*, *supra*, 34 Cal.3d at pp. 479-480, 482 [17-year-old offender].) In *Dillon*, "a clinical psychologist testified that after conducting a series of tests and examinations he concluded that defendant was immature in a number of ways: intellectually, he showed poor judgment and planning; socially, he functioned 'like a much younger child'; emotionally, he reacted 'again, much like a younger child' by denying the reality of stressful events and living rather in a world of make-believe. In particular, the psychologist gave as his opinion that when confronted by the figure of [the victim] armed with a shotgun in the circumstances of this case, defendant probably 'blocked out' the reality of the situation and reacted reflexively, without thinking at all." This uncontradicted assessment was corroborated by defendant's plausible version of the events which was given substantial weight by the judge and jury. (*Id*. at p. 482-483.)

Guillen does not suggest he was prevented from submitting testimony, letters, a psychologist's report, or any other evidence upon which the trial court might have exercised its discretion under section 190.5 to sentence him to less than LWOP. Thus, it appears on this record, that the only reason the sentencing court did not consider the offender's upbringing, mental and emotional development, impetuosity, ability to appreciate risks and consequences, or his potential for rehabilitation, was the defendant's choice not to present evidence of any such factors.

In sum, we conclude that section 190.5 is not unconstitutional on its face and that it was not applied to defendant in a manner that violated the Eighth Amendment to the United States Constitution.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST