STATE OF CONNECTICUT *v.* JODI D.*
(SC 20370)

McDonald, D'Auria, Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to the statute (§ 53a-60b (a) (1)) delineating the crime of assault
of a disabled person in the second degree, a person is guilty of that
crime when he or she commits the crime of assault in the second degree
and the victim is "physically disabled," as defined by statute (§ 1-1f).

* In accordance with our policy of protecting the privacy interests of the
victims of family violence, we decline to identify the victim or others through
whom the victim's identity may be ascertained. See General Statutes § 54-86e.

State *v.* Jodi D.

Pursuant to § 1-1f (b), "[a]n individual is physically disabled if he has any chronic physical handicap, infirmity or impairment . . . ."

Convicted, after a jury trial, of the crime of assault of a disabled person in the second degree, the defendant appealed to the Appellate Court, claiming, inter alia, that § 53a-60b (a) (1), the statute under which she had been convicted, was unconstitutionally vague as applied to her conduct to the extent that it relied on the definition of physical disability set forth in § 1-1f (b). The defendant and her sister, S, had engaged in a physical altercation during which the defendant struck S with a wooden billy club. At the time of the altercation, S suffered from fibromyalgia, a condition for which she had been receiving ongoing medical treatment and taking prescription medication. As a result of that condition, S experienced chronic pain issues and physical limitations that made sitting, standing and walking difficult. The Appellate Court affirmed the judgment of conviction, concluding, inter alia, that § 53a-60b (a) (1) was not unconstitutionally vague as applied to the defendant's conduct because the term "physical disability," as defined in § 1-1f (b), had a readily ascertainable meaning, and the defendant's conduct clearly came within the unmistakable core of conduct prohibited by § 53a-60b (a) (1). The Appellate Court also concluded that there was sufficient evidence to support the jury's finding that the victim suffered from a physical disability. On the granting of certification, the defendant appealed to this court. *Held*:

1. The defendant could not prevail on her claim that §§ 53a-60b (a) (1) and 1-1f (b) were unconstitutionally vague as applied to her conduct: this court consulted the dictionary definitions of "handicap," "infirmity," and "impairment," as used in § 1-1f (b), and concluded that those words, as well as the term "physically disabled" in § 53a-60b (a) (1), are not so inherently vague that a person of ordinary intelligence would not know what conduct is prohibited under § 53a-60b (a) (1), at least as applied to the defendant's conduct toward S; moreover, the courts of other jurisdictions have previously rejected claims that the terms "handicap" and "impaired" are unconstitutionally vague, and there was no merit to the defendant's claim that the statutes were unconstitutionally vague insofar as they conferred unfettered discretion on police officers and prosecutors, among others, to determine which victims are physically disabled enough to warrant prosecution of their aggressors under § 53a-60b (a) (1), as a statute, such as § 53a-60b (a) (1), that is sufficiently clear to give a person of common intelligence notice of what is prohibited necessarily is sufficiently clear to cabin the discretion of police officers and prosecutors within constitutional limits.

2. This court concluded that § 53a-60b (a) (1) was unconstitutionally overinclusive insofar as the statute could be applied to assaults on persons whose physical disabilities neither diminish their ability to defend themselves from assault nor make them particularly vulnerable to injury, which would have no reasonable and substantial relation to the statute's

State *v.* Jodi D.

purpose, and, although § 53a-60b (a) (1) still constitutionally can be applied to conduct that comes within the statute's rational core, because the jury in the present case was not instructed that it was required to find that S had a diminished ability to defend herself or that she was particularly vulnerable to injury at the time of the assault in order to find the defendant guilty under § 53a-60b (a) (1), the case was remanded for a new trial at which the jury could be instructed in accordance with the foregoing standard.

(*Two justices concurring in part and dissenting in part in one opinion*)

Argued December 7, 2020—officially released August 31, 2021**

*Procedural History*

Substitute information charging the defendant with the crimes of assault of a disabled person in the second degree, assault in the third degree and reckless endangerment in the second degree, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, and tried to the jury before *Cremins, J.*; verdict of guilty of assault of a disabled person in the second degree and reckless endangerment in the second degree; thereafter, the court vacated the verdict as to the charge of reckless endangerment in the second degree; judgment of guilty of assault of a disabled person in the second degree, from which the defendant appealed to the Appellate Court, *Sheldon, Keller* and *Flynn, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *new trial.*

*Megan L. Wade*, assigned counsel, with whom was *James P. Sexton*, assigned counsel, for the appellant (defendant).

*Brett R. Aiello*, deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Karen Diebolt*, former assistant state's attorney, for the appellee (state).

** August 31, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

State *v.* Jodi D.

*Naomi T. Fetterman* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

McDONALD, J. The issues before us in this appeal are (1) whether the term "physically disabled," as used in General Statutes § 53a-60b (a) (1) and defined by General Statutes § 1-1f (b), is unconstitutionally vague as applied to the conduct of the defendant, Jodi D., who was convicted of assault on a victim who suffered from fibromyalgia and other physical ailments, (2) if the statutes are not unconstitutionally vague, whether they are unconstitutionally overinclusive, and (3) whether there was insufficient evidence to establish that the victim suffered from a physical disability within the meaning of § 53a-60b (a) (1).

The defendant was charged with assault of a disabled person in the second degree in violation of § 53a-60b (a) (1), assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and reckless endangerment in the second degree in violation of General Statutes § 53a-64 (a) after an altercation with the victim, the defendant's sister, during which the defendant struck the victim with a wooden billy club. The jury found the defendant guilty of assault of a disabled person in the second degree and reckless endangerment in the second degree and not guilty of assault in the third degree, and the trial court rendered judgment of conviction. Thereafter, the defendant appealed to the Appellate Court, claiming, among other things, that "§ 53a-60b (a) (1) is unconstitutionally vague as applied to her conduct" and that "the evidence did not support a finding that the victim was physically disabled . . . ." (Footnote omitted.) *State* v. *Dojnia*, 190 Conn. App. 353, 355–56, 210 A.3d 586 (2019). The Appellate Court rejected these claims and affirmed the judgment of conviction. Id., 386. We then granted the defendant's peti-

State *v.* Jodi D.

tion for certification to appeal to this court, limited to the following issues: (1) "Did the Appellate Court correctly conclude that . . . §§ 1-1f (b) and 53a-60b (a) (1) were not unconstitutionally vague as applied to the defendant?" And (2) "[d]id the Appellate Court correctly conclude that the evidence the state presented at trial was sufficient to prove beyond a reasonable doubt that the victim was 'physically disabled' under the governing statutes?" *State* v. *Dojnia*, 333 Conn. 914, 215 A.3d 1211 (2019). The defendant also claims on appeal that, even if the statutes are not unconstitutionally vague, § 53a-60b (a) (1) is unconstitutional because there is no rational nexus between the broad scope of the statute and the legislature's narrow purpose in enacting it.[1] Although we reject the defendant's claim that the statutes are unconstitutionally vague, we conclude that they are unconstitutionally overinclusive and lack any rational basis as applied to assaults on persons whose physical disabilities neither diminish their ability to defend themselves from assault nor make them particularly vulnerable to injury. Accordingly, we reverse the judgment of the Appellate Court and remand the case for a new trial.

The opinion of the Appellate Court sets forth the following facts that the jury reasonably could have found. "In October, 2015, the defendant and the victim, who are sisters, resided in separate units of a duplex style home in Naugatuck that was owned by their mother. For years prior to the events at issue, the victim suffered from chronic pain and was physically limited

---

[1] We recognize that this issue may be outside the scope of the certified questions because overinclusiveness and vagueness are distinct concepts. Nevertheless, we address the issue because the defendant raised it before the Appellate Court and it is closely intertwined with the certified questions. See, e.g., *Montoya* v. *Montoya*, 280 Conn. 605, 617 n.11, 909 A.2d 947 (2006) (this court has discretion to review issue that is outside scope of certified questions); see also footnote 6 of this opinion.

State *v.* Jodi D.

in performing everyday tasks, such as standing, walking, and climbing stairs.

"For several years prior to the events at issue, the defendant and the victim did not have a good relationship. The relationship between the defendant and the victim worsened in January, 2015, when the defendant's son, who resided with the defendant, was involved in an altercation with the victim at her residence. According to the victim, during this prior incident, the defendant's son broke down her back door and attacked her, which led to his arrest. Tensions escalated further because the defendant was unhappy with the fact that the victim's dog entered her portion of their shared backyard, and that the victim failed to clean up after her dog. Shortly before the incident underlying this appeal, the defendant erected a small plastic fence to separate her backyard from that of the victim in an attempt to keep the victim's dog away. The fence ran across the backyard and between the two rear doors of the residence. The victim was unhappy about the fence. The victim's mother had asked the victim to look for another place to live, and, by October, 2015, the victim was actively planning to move out of her residence.

"Late in the evening on October 10, 2015, the victim walked out of the front door of her residence. From one of the windows of the defendant's residence, the defendant made a negative comment to the victim, who was talking on her cell phone, but the victim declined to engage the defendant in conversation. At approximately 1:30 a.m., on October 11, 2015, the victim left her residence to walk her dog by means of her back door, which was adjacent to the back door leading into the defendant's residence. By this point in time, the victim had consumed multiple alcoholic beverages. The victim walked her dog in the vicinity of her nearby driveway.

"While the victim was reentering her residence with her dog, she noticed that a light had been turned on

State *v.* Jodi D.

inside of the defendant's residence. The victim then stepped back outside, at which time the defendant, who was lurking near the victim's back door, grabbed the victim by the upper part of her body and pulled her over the small plastic fence that was separating their backyards, causing the victim to topple to the ground. A physical struggle between the defendant and the victim ensued, during which the defendant struck the victim repeatedly with a wooden billy club. The victim, while lying on the ground, tried to prevent the defendant from continuing to strike her. The victim grabbed the defendant's hand and pulled her by her hair, causing [the defendant] to fall on top of [the victim]. The victim repeatedly told the defendant to '[l]et go' of the billy club, and the defendant told the victim that she was tired of her, that she hated her, and that she wanted her 'out of here.'

"Ultimately, the victim restrained the defendant, and the victim asked her what their father, who had died, would say to them if he saw them fighting. The defendant promised not to strike the victim again, at which time the victim released her grasp on the defendant's hair and the defendant stepped away from the victim.

"The defendant picked up the victim's cell phone, which had fallen out of the victim's hands during the altercation, and gave it back to her. The victim tossed aside one of the defendant's garbage pails before making her way back inside. The victim was bleeding from her nose and choking on blood. The victim sustained multiple bruises and lacerations on her face, back, left arm, left shoulder, left leg, and torso. The victim's right eye swelled, and she experienced a great deal of pain, particularly pain that emanated from her jaw. The victim's clothing was stained with blood and dirt, and she was unable immediately to locate either her eyeglasses or a pendant that she had been wearing prior to the altercation.

State *v.* Jodi D.

"After the victim went back inside of her residence, she called the police. Soon thereafter, Naugatuck Police Officer Robert Byrne arrived on the scene. He encountered the defendant and the victim arguing in front of the residence. After he separated the sisters, he met privately with the defendant. The defendant admitted that she had struck the victim with the wooden billy club, which was on her kitchen table but stated that she had acted in self-defense. The defendant also stated that she had begun arguing with the victim after she caught the victim 'snooping around in the backyard . . . .' She stated that the small plastic fence that she had erected to prevent the victim's dog from entering her portion of the backyard was a cause of consternation between her and the victim. The defendant sustained injuries during the incident and claimed to have been 'strangled' by the victim, but her injuries were not serious enough to warrant medical treatment. Byrne arrested the defendant on the assault charge, took her into custody, and transported her to police headquarters to complete the booking process.

"Naugatuck Police Officer Shane Andrew Pucci arrived on the scene to provide Byrne with backup assistance. He spoke with the victim privately in her residence and accompanied her to a hospital after emergency medical services arrived on the scene. At the hospital, medical personnel took X-ray images of the victim and treated her injuries. While at the hospital, the victim provided Byrne with an oral statement concerning the incident and her injuries. By 6 a.m. on October 11, 2015, the victim was discharged from the hospital and transported home. Pucci gave the victim a misdemeanor summons for disorderly conduct." *State* v. *Dojnia*, supra, 190 Conn. App. 356–59.

The defendant was charged with assault of a disabled person in the second degree, assault in the third degree and reckless endangerment in the second degree. "At

State *v.* Jodi D.

trial, the victim testified about her extensive medical history. She testified that she had experienced back problems since 2000 and had undergone two surgical procedures on her back. She testified that she had undergone multiple 'foot surgeries' in 1990, 'five or six ear surgeries' in 2000, and 'one breast surgery.' Also, the victim testified that she had suffered from a nerve condition called fibromyalgia, for which she receives ongoing medical treatment. She testified that, at the time that the assault occurred, she was using a variety of medications that had been prescribed for her. Specifically, she was using a medication called Savella to treat her fibromyalgia, three times per day. She was using a medication called Vicodin to treat her pain, usually once per day. She explained: 'Depending on the day, if . . . I know I'm not going to be doing much that day, I'll probably just take one [Vicodin] in the morning or when I wake up.' She also testified that she used Ambien, which helped her to sleep, as needed. The victim testified that she had experienced physical limitations for many years: 'I can't sit too long. I can't stand too long. Walking a far distance is difficult for me. Stairs are very difficult for me to do if I'm carrying something. Just grocery shopping, doing laundry, it's a task for me to do those things.'

"The victim testified that she had received treatment from her primary care physician as well as from Matthew Letko, whom she described as being an employee of '[the] arthritis center.' The victim testified that she had received Social Security disability payments since 2004, and that, in the ten years prior to her testimony in 2017, she had not been engaged in any employment to supplement her disability income.

"The state presented testimony from Letko, who explained that he was a physician's assistant employed

State *v.* Jodi D.

by the Arthritis Center of Connecticut, in Waterbury.[2] Letko testified that the victim had been a patient of the center since February, 2008, and that he had been treating her since 2009 for 'chronic pain issues, chronic low back pain and fibromyalgia syndrome.' He testified that fibromyalgia is 'a widespread pain syndrome primarily affecting muscles, upper back, mid-back, low back, hips, shoulders. It presents with a lot of tenderness, sensitivity to touch. There can also be other symptoms associated, like fatigue, poor sleep.' Letko testified that the treatment that he provided to the victim included prescribing 'Savella, which is a medication specifically approved for fibromyalgia syndrome, muscle relaxants, anti-inflammatory medications; other treatments also include injections, physical therapy, [and] aquatic therapy.' He testified that, in October, 2015, the victim was prescribed Savella, Ambien and Vicodin. Letko testified that he evaluated the victim on a monthly basis. He stated that the physical limitations related to her chronic back pain and fibromyalgia included difficulty in prolonged sitting, hearing, bending, lifting, and using stairs. Letko testified that, although her pain symptoms may fluctuate from day to day, her condition was not going to improve. He testified that the goal of his treatment plan for the victim 'would be to manage the pain effectively enough where she can have a quality of life where she can function around the home, in the community . . . take care of herself, get out of bed every morning, perform basic tasks around the house.' '' (Footnote in original.) Id., 365–67.

The defendant testified on her own behalf at trial. On cross-examination, the defendant testified that she knew that the victim was "disabled" and that she was

_____

[2] "The court recognized Letko, who testified that he had received training and licensure as a physician's assistant and had practiced under the supervision of a medical doctor, to be 'an expert in the area of a physician's assistant.' '' *State* v. *Dojnia*, supra, 190 Conn. App. 366 n.4.

State *v.* Jodi D.

aware of some of the victim's surgeries and physical
ailments. On redirect, the defendant testified that the
victim exaggerated and lied about her medical condi-
tions. She also testified that, contrary to the victim's
testimony, the victim had worked as a dog walker and
house cleaner.[3]

The jury found the defendant guilty of assault of
a disabled person in the second degree and reckless
endangerment in the second degree. At sentencing, pur-
suant to the state's request, the sentencing court
vacated the conviction of reckless endangerment in the
second degree on double jeopardy grounds pursuant
to *State* v. *Polanco*, 308 Conn. 242, 245, 61 A.3d 1084
(2013). The court sentenced the defendant to five years
of imprisonment, suspended after two years, and three
years of probation.

The defendant appealed from the judgment of convic-
tion to the Appellate Court, claiming, for the first time,
that "§ 53a-60b (a) (1) is unconstitutionally vague as
applied to her conduct." *State* v. *Dojnia*, supra, 190
Conn. App. 359. Specifically, the defendant claimed
that, by incorporating the definition of "physical disabil-
ity" set forth in § 1-1f (b) into § 53a-60b (a) (1), the
legislature "impermissibly delegated basic policy mat-
ters to the courts for resolution of whether a diagnosis
of fibromyalgia falls within the definition of physically
disabled for resolution on an ad hoc basis. In so doing,
the enforcement of these statutes in the defendant's
case [was] arbitrary." (Internal quotation marks omit-
ted.) Id., 361. The Appellate Court concluded that "the
term 'physical disability,' as used in § 1-1f (b), has a

---

[3] The victim testified during the state's case that she had not done any
"side jobs" to supplement her Social Security disability income. When the
prosecutor asked the victim whether she had ever cleaned houses, she said
"[n]ever." When the prosecutor asked the victim whether she had walked
dogs, the victim replied that she had walked her own dog and her friends'
dogs. The victim did not indicate that she had done this on a regular basis
as a source of income.

State *v.* Jodi D.

readily ascertainable meaning. It refers to *any* recurring bodily condition that detrimentally affects one's ability to carry out life's activities, regardless of whether it is congenital, [or] the result of bodily injury, organic processes, or . . . illness. The language used in the statute, particularly the phrase, 'not limited to,' reflects that the legislature did not intend to set forth an exhaustive list of each and every bodily condition that could result in a physical disability, and the fact that the legislature did not do so does not necessitate a conclusion that the statute lacks sufficient guidance with respect to its meaning.'' (Emphasis in original.) Id., 369. The court concluded that the defendant's conduct ''clearly came within the unmistakable core of conduct prohibited by § 53a-60b (a) (1)''; id.; and, accordingly, rejected the defendant's claim that the statute is unconstitutionally vague as applied to her conduct. Id., 359.

The Appellate Court also rejected the defendant's claim that the state had failed to prove that the victim suffered from fibromyalgia, concluding that there was sufficient evidence that the victim suffered from ''various chronic pain issues, chronic low back pain, and fibromyalgia,'' and that, in any event, the state did not have the burden of proving that ''the victim's physical disability was caused by any particular illness or injury.'' (Internal quotation marks omitted.) Id., 375. For similar reasons, the court rejected the defendant's claim that fibromyalgia is not a physical disability under § 53a-60b (a) (1) as a matter of law. Id., 376–78. Accordingly, the court concluded that there was sufficient evidence to support the jury's finding that the victim suffered from a physical disability. Id., 377–78. Having rejected the defendant's claims on appeal,[4] the court affirmed the judgment of conviction. Id., 386.

[4] The Appellate Court also rejected the defendant's claim that the prosecutor engaged in prosecutorial impropriety during closing argument. *State* v. *Dojnia*, supra, 190 Conn. App. 378. The defendant does not challenge that ruling on appeal to this court.

State *v.* Jodi D.

This certified appeal followed.[5] The defendant claims
on appeal that the Appellate Court incorrectly deter-
mined that §§ 53a-60b (a) (1) and 1-1f (b) are not uncon-
stitutionally vague as applied to her conduct. Specifically,
she contends that, as applied in the criminal context,
§ 53a-60b (a) (1) is "ambiguous" because § 1-1f (b) is
a remedial statute and, therefore, must be liberally con-
strued, whereas § 53a-60b (a) (1) is a criminal statute
that must be strictly construed. The defendant further
contends that § 53a-60b (a) (1) is unconstitutional
because its broad scope lacks any rational nexus to the
intent of the legislature in enacting the statute, namely,
to protect persons who have a diminished ability to
defend themselves from assault or who are particularly
vulnerable to injury.[6] Finally, the defendant contends

[5] After this appeal was filed, we granted permission to the Connecticut
Criminal Defense Lawyers Association to file an amicus curiae brief in
support of the defendant's position.

[6] The state contends that the only claim that the defendant raised before
the Appellate Court and that is reviewable by this court is that §§ 53a-60b
(a) (1) and 1-1f (b) are unconstitutionally "vague as applied to her because
fibromyalgia purportedly does not rise to the level of a physical disability."
We disagree. Although the defendant's brief to the Appellate Court was not
a model of clarity, the defendant expressly claimed that the statutes are "so
unclear that ordinary people cannot understand what specifically constitutes
'physically disabled' . . . ." The defendant also claimed that, although "the
legislature intended to enhance penalties [only] for crimes against the most
vulnerable, including those with clearly diagnosable and severe disabilities,"
the statutes "arguably . . . could apply to nearly all victims." Although the
defendant did not expressly characterize the latter claim as implicating the
overinclusiveness doctrine, her failure to label her argument using the cor-
rect technical rubric does not render the claim unreviewable.

The concurrence and dissent disagrees with this conclusion and contends
that the defendant's arguments do not "constitute a separate claim under
the overinclusiveness doctrine." As we explain subsequently in this opinion,
a statute is unconstitutionally overinclusive if it creates a classification and
its application to some members of the class is not rationally related to a
legitimate government purpose. The defendant in the present case has
claimed that it would be arbitrary to apply § 53a-60b (a) (1) to assaults on
victims who, although they suffer from a "physical disability," as that term
is broadly defined, do not have a diminished ability to defend themselves
or a heightened vulnerability to injury. In other words, the defendant con-
tends that the class of persons to which the statute applies is larger than

State *v.* Jodi D.

that the evidence was insufficient to establish that the victim was physically disabled for purposes of § 53a-60b (a) (1). We conclude that §§ 53a-60b (a) (1) and 1-1f (b) are not unconstitutionally vague. We agree with the defendant, however, that § 53a-60b (a) (1) is unconstitutionally overinclusive as applied to assaults on persons whose physical disabilities neither diminish their ability to defend themselves from assault nor make them particularly vulnerable to injury. Because the jury was not instructed on the proper standard for determining whether the victim had a physical disability within the meaning of § 53a-60b (a) (1), we further conclude that the case must be remanded for a new trial.

We first address the defendant's claim that §§ 53a-60b (a) (1) and 1-1f (b) are unconstitutionally vague as applied to her conduct. This issue presents a legal question subject to de novo review. See, e.g., *State* v. *Kirby*, 137 Conn. App. 29, 39, 46 A.3d 1056, cert. denied, 307 Conn. 908, 53 A.3d 222 (2012). "A statute . . . [that] forbids or requires conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. . . . Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that [she] may act accordingly. . . . A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to [her], the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [she] had inadequate notice of what was prohibited or that

the class of persons for whom application of the statute would be rationally related to a legitimate government purpose, which is a classic overinclusiveness claim. The concurrence and dissent cites no authority for the proposition that a claim that has been distinctly raised is unreviewable because the party making the claim did not attach the correct doctrinal label to it.

State *v.* Jodi D.

[she was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness [because] [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial [decisions] involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citation omitted; internal quotation marks omitted.) *State* v. *Scruggs*, 279 Conn. 698, 709–10, 905 A.2d 24 (2006).

The United States Supreme Court has previously held that "the more important aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement. . . . [When] the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." (Citation omitted; internal quotation marks omitted.) *Kolender* v. *Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); see, e.g., *Grayned* v. *Rockford*, 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) ("[a] vague law impermissibly delegates basic policy matters to [police officers], judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application").

With these principles in mind, we turn to the defendant's claim that §§ 53a-60b (a) (1) and 1-1f (b) are unconstitutionally vague. Section 53a-60b (a) provides in relevant part: "A person is guilty of assault of [a] . . . disabled

State *v.* Jodi D.

. . . person . . . in the second degree when such person commits assault in the second degree under section 53a-60 . . . and (1) the victim of such assault . . . is . . . physically disabled, as defined in section 1-1f . . . .'' Section 1-1f (b) provides that ''[a]n individual is physically disabled if he has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device.''

The defendant concedes that ''[t]here is nothing inherently ambiguous about [the] terms'' used in §§ 53a-60b (a) (1) and 1-1f (b), and that the legislature plainly intended that the definition of ''physically disabled'' set forth in § 1-1f (b) would, in the civil context, ''encompass as many individuals as possible . . . .''[7] The defendant contends, however, as applied in the criminal context, § 53a-60b (a) (1) is ''ambiguous'' because § 1-1f (b) is a remedial statute and, therefore, must be liberally construed, whereas § 53a-60b (a) (1) is a criminal statute that must be strictly construed. Compare *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 197, 928 A.2d 586 (2007) (Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq., is remedial legislation that must ''be construed liberally to effectuate [its] beneficent purposes'' (internal quotation marks omitted)), aff'd, 289 Conn. 57, 956 A.2d 579 (2008), with

_____

[7] Somewhat inconsistently, the defendant also contends that ''a person of ordinary intelligence could not determine with a reasonable degree of certainty that a person who allegedly suffered from fibromyalgia and other chronic pain issues would be considered 'physically disabled' and that, consequently, [the person] would be subject to enhanced criminal liability.'' In the very next sentence, however, she contends that this is so because § 53a-60b (a) (1) is a criminal statute. As we subsequently explain in the body of this opinion, a statute that is clear and unambiguous in the civil context does not become vague merely because it is applied in the criminal context.

State *v.* Jodi D.

*State* v. *Skakel*, 276 Conn. 633, 674, 888 A.2d 985 ("criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state" (internal quotation marks omitted)), cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

As a preliminary matter, we agree with the defendant that, as used in § 53a-60b (a) (1), the term "physically disabled" and, as used in § 1-1f (b), the words "handicap," "infirmity" and "impairment" are not so inherently vague that a person of ordinary intelligence would not know what conduct is prohibited, at least as applied to the defendant's conduct toward the victim. The term "handicap" is defined in part as "a disadvantage that makes achievement unusually difficult; [especially] . . . a physical disability that limits the capacity to work." Webster's Third New International Dictionary (2002) p. 1027. "Infirmity" is defined in part as "the quality or state of being infirm" and "an unsound, unhealthy, or debilitated state . . . ." Id., 1159. "Infirm" is defined in part as "not strong or sound physically" or "of poor or deteriorated vitality [especially] as a result of age . . . ." Id. "Impairment" is defined in part as "the act of impairing or the state of being impaired: INJURY <physical and mental diseases and [impairments] of man—*Current* [*Biography*]>: DETERIORATION <any [impairment] of his bodily vigor through sickness or age—J.G. Frazer.>" Id., 1131. "Impair" is defined in part as "to make worse," "diminish in quantity, value, excellence, or strength," or "do harm to . . . ." Id. We conclude on the basis of these definitions that "physically disabled," as used in § 53a-60b (a) (1), clearly means having a physical condition that diminishes the ability of a person, or a part or organ of the person, to function properly, thereby limiting the person's ability to perform life's activities, such as working.[8]

[8] The defendant contends that the Appellate Court improperly engrafted language into §§ 53a-60b (a) (1) and 1-1f (b) when it concluded that a

State *v.* Jodi D.

We further note that our sister courts have previously rejected claims that the terms "handicap" and "impaired" are unconstitutionally vague. In *State* v. *Allen*, 334 N.J. Super. 133, 756 A.2d 1087 (Law Div. 2000), overruled in part by *State* v. *Dixon*, 396 N.J. Super. 329, 933 A.2d 978 (App. Div. 2007), the Law Division of the Superior Court of New Jersey considered the constitutionality of a state statute that imposed an enhanced penalty on a defendant who, in committing a crime, "acted with the purpose to intimidate" a person "because of . . . [a] handicap . . . ." (Internal quotation marks omitted.) Id., 136. The court rejected a claim that the statute was unconstitutionally vague because "handicapped" had been defined by dictionary as "having a physical or mental disability that substantially limits activity." (Internal quotation marks omitted.) Id., 139. In addition, "disability" had been defined as "incapacitated by illness, injury or wound."[9] (Internal quotation marks omitted.) Id.

"physical disability" is a condition that "detrimentally affects one's ability to carry out life's activities . . . ." *State* v. *Dojnia*, supra, 190 Conn. App. 369. We disagree. It is implicit in the notion of "physical disability" that a person has a physical condition that detrimentally affects the person's ability to function in some manner, and that functional impairment normally is experienced and measured by the extent to which the condition detrimentally affects the person's ability to carry out life's activities.

We express no opinion as to the defendant's contention that an assault on a person who wears eyeglasses comes within the "physically disabled" prong of § 53a-60b (a) (1). Although, as the defendant points out, poor eyesight undoubtedly reflects a functional impairment of a person's vision and can detrimentally affect a person's ability to carry out life's activities, we note that the legislature has limited the class of victims with vision related impairments under the statute to blind persons. See General Statutes § 53a-60b (a) ("assault of an elderly, blind, disabled or pregnant person or a person with intellectual disability"). In light of this specificity, it would appear that the defendant's hypothetical is inapt. See, e.g., *Brennan* v. *Brennan Associates*, 316 Conn. 677, 696, 113 A.3d 957 (2015) ("specific terms covering the given subject matter will prevail over general language of the same . . . statute which might otherwise prove controlling" (internal quotation marks omitted)).

[9] The court in *State* v. *Allen*, supra, 334 N.J. Super. 133, stated that the criminal statute required the state to prove that "a reasonable person in the

State *v.* Jodi D.

In *People* v. *Percz*, 100 Misc. 2d 1018, 420 N.Y.S.2d 477 (1979), the defendant contended that a New York statute that prohibited, among other things, ''driving while impaired by the use of a drug'' was unconstitutionally vague. Id., 1018. In support of this claim, he relied on a case holding that two subdivisions of that same statute that prohibited driving while intoxicated—a misdemeanor—or while impaired—a ''violation''—were unconstitutionally vague because the statute provided no standards for determining whether a defendant was '' 'impaired' '' or '' 'intoxicated,' '' and because ''there was no evidence that the defendant was sufficiently drunk to make such standard unnecessary . . . .'' Id., 1019. The court in *Percz* held that, because the subdivision of the statute that the defendant was charged with violating only prohibited operation of a vehicle while '' 'impaired' '' and required ''no differentiation between degrees of drug influence,'' that provision was not unconstitutionally vague. Id. Thus, the court implicitly held that any degree of impairment clearly came within

position of the defendants would be on fair notice that [the victim was] handicapped.'' Id., 139. This is because the use of the term ''because of'' in the statute ''connotes a causal link between the infliction of injury and bias motivation . . . .'' (Internal quotation marks omitted.) Id., 140. In other words, the defendant must know at the time of the assault that the victim is handicapped. In the present case, defense counsel conceded at oral argument before this court that proof of such knowledge is not required under § 53a-60b (a) (1), thereby abandoning any such claim. Accordingly, we express no opinion on that issue here. We note, however, that, even if such knowledge is required, the defendant admitted at trial that she knew that the victim was disabled. We further note that proof of such knowledge would not be constitutionally required. Cf. *State* v. *Higgins*, 265 Conn. 35, 48, 826 A.2d 1126 (2003) (The statute making murder of a person under the age of sixteen a capital felony without requiring the state to prove that the defendant knew the victim's age ''poses no risk of unfairness to [the defendant]. It is no snare for the unsuspecting. Although the [defendant] . . . may be surprised to find that his intended victim [is under the age of sixteen], he nonetheless knows from the very outset that his planned course of conduct is wrongful. The situation is not one [in which] legitimate conduct becomes unlawful solely because of the identity of the [victim]. In a case of this kind the offender takes his victim as he finds him.'' (Internal quotation marks omitted.)).

State *v.* Jodi D.

the statutory prohibition. Accordingly, we conclude— as, indeed, the defendant does not dispute—that the victim in the present case was clearly physically disabled within the meaning of §§ 53a-60b (a) (1) and 1-1f (b) because she had a physical condition that diminished her ability to function, thereby limiting her ability to perform life's activities.

The defendant contends, however, that, because § 53a-60b (a) is a criminal statute that must be strictly construed, and § 1-1f (b) is a remedial statute that must be liberally construed, this somehow renders these otherwise clear statutes vague. We are not persuaded. The rule that criminal statutes must be strictly construed is a rule of statutory construction that applies to inherently ambiguous criminal statutes, not a rule of substantive law barring the legislature from enacting broad criminal statutes. See, e.g., *Albernaz* v. *United States*, 450 U.S. 333, 342, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981) ("Lenity . . . serves only as an aid for resolving an ambiguity; it is not to be used to beget one. The rule comes into operation at the end of the process of construing what [the legislature] has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." (Internal quotation marks omitted.)). Nor does the rule render a broad but clear and unambiguous criminal statute ambiguous. See, e.g., id., 342–43.

The defendant also claims that, even if §§ 53a-60b (a) (1) and 1-1f (b) are sufficiently clear to give notice to a person of ordinary intelligence of what conduct is prohibited, they are unconstitutionally vague because they confer "unfettered discretion [on police officers], prosecutors, judges and juries to determine which victims [are] physically disabled 'enough' to warrant enhanced criminal liability . . . ." See, e.g., *Kolender* v. *Lawson*, supra, 461 U.S. 358 ("[T]he more important aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine—the

State *v.* Jodi D.

requirement that a legislature establish minimal guidelines to govern law enforcement. . . . [When] the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'' (Citation omitted; internal quotation marks omitted.)); see also, e.g., *United States* v. *Davis*, U.S. , 139 S. Ct. 2319, 2325, 204 L. Ed. 2d 757 (2019) (''[v]ague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police [officers], prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide''); 16B Am. Jur. 2d 488–89 n.8, Constitutional Law § 962 (2020) (''[a]n unconstitutionally vague law invites arbitrary enforcement . . . if it leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case''). A careful review of these authorities, however, makes it clear that the notice prong and the arbitrary enforcement prong of the vagueness doctrine are inextricably intertwined; that is, an unconstitutionally vague statute allows for arbitrary enforcement *because* a person of common intelligence, whether the person is a defendant, a police officer, a prosecutor, a judge or a juror, must guess at its meaning. Conversely, a statute that is sufficiently clear to give a person of common intelligence notice of what is prohibited necessarily is sufficiently clear to cabin the discretion of police officers and prosecutors within constitutional limits. Because we have concluded that the statutes are sufficiently clear to give notice to a person of ordinary intelligence that the victim was physically disabled for purposes of § 53a-60b (a) (1), we reject this claim.[10]

_____

[10] To the extent that the defendant contends that § 53a-60b (a) (1) is unconstitutionally vague because it confers unfettered discretion on prosecutors whether to prosecute conduct that clearly falls within its scope, we disagree. The United States Supreme Court has previously held that, ''[w]ithin the limits set by the legislature's constitutionally valid definition

State *v.* Jodi D.

Finally, the defendant claims that § 53a-60b (a) (1) is unconstitutional because there is no rational nexus between the exceedingly broad scope of the "physically disabled" prong and the legislature's relatively narrow intent in enacting the statute. The defendant points out that the legislative history of § 53a-60b (a) (1) indicates that the legislation was intended to prevent crimes against persons who are particularly vulnerable to assault and injury as a result of being physically disabled, and she claims that, unless a limiting gloss is applied, it can be applied to persons who do not fall within that class. See 20 S. Proc., Pt. 7, 1977 Sess., p. 2822, remarks of Senator Salvatore C. DePiano (proposed legislation "is directed at trying to stop . . . assaults [on] people who are blind and elderly and disabled who cannot defend themselves"); 20 H.R. Proc., Pt. 7, 1977 Sess., p. 2896, remarks of Representative Robert G. Gilligan (expressing concerns about "vulnerability to crime," "diminished physical strength and stamina" and diminished ability of persons covered by statute "to defend themselves or to [escape] from threat-ening situations"); 20 H.R. Proc., supra, p. 2896 (noting that elderly persons are more easily injured and slower to recover from injury); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1977 Sess., pp. 479–82 (testimony of seventy-seven year old woman regarding multiple assaults and robberies that she had suffered and vulnerabilities of elderly people).

As we indicated, although the defendant frames this claim as implicating the vagueness doctrine, it more properly is characterized as a claim that § 53a-60b (a) (1) is unconstitutionally *overinclusive*. See footnote 6

of chargeable offenses, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was [not] deliberately based [on] an unjustifiable standard such as race, religion, or other arbitrary classification." (Internal quotation marks omitted.) *Bordenkircher* v. *Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978).

State *v.* Jodi D.

of this opinion; see also footnote 1 of this opinion and accompanying text. In other words, the defendant effectively contends that the statute violates substantive due process principles because many of its clear applications are not rationally related to a legitimate government purpose. See, e.g., *State* v. *Higgins*, 265 Conn. 35, 68–69, 826 A.2d 1126 (2003) (recognizing in dictum that statute may be so overinclusive or underinclusive that it does not rationally advance legislative purpose); see also, e.g., *United States* v. *Thornton*, 901 F.2d 738, 739–40 (9th Cir. 1990) (when defendant claimed that statute was overinclusive, and statute did not impinge on constitutionally protected conduct or implicate suspect class, court considered whether classification created by statute was irrational or unreasonable); *Bynes* v. *State*, 854 So. 2d 289, 291 (Fla. App. 2003) (when defendant claimed that statute was overinclusive, court applied principle that "[t]he rational basis test requires the legislature to have a legitimate purpose for enacting the statute and to select means which have a reasonable and substantial relation to its purpose which are not unreasonable, arbitrary, or capricious"), review denied, 892 So. 2d 1011 (Fla. 2004); *State* v. *Mitchell*, 757 N.W.2d 431, 439 (Iowa 2008) ("[e]ven under the rational basis test, a statute may be unconstitutional if it is so overinclusive and underinclusive as to be irrational").[11]

_____

[11] The concurrence and dissent points out that *State* v. *Higgins*, supra, 265 Conn. 69, and *United States* v. *Thornton*, supra, 901 F.2d 739–40, involved equal protection claims, not substantive due process claims, and it questions whether the overinclusiveness doctrine is applicable outside of the context of an equal protection claim. We agree that the defendant's claim in the present case could have been framed as an equal protection claim. See, e.g., id.; *State* v. *Higgins*, supra, 69; *State* v. *Mitchell*, supra, 757 N.W.2d 439. Specifically, she could have claimed that it is irrational to treat a ninety pound woman with no physical disability who assaults a heavyweight boxer with periodic migraines more harshly than a heavyweight boxer with periodic migraines who assaults a ninety pound woman with no physical disability. We disagree, however, that overinclusiveness claims can never implicate substantive due process principles. It is well established that a statute that is not rationally related to a legitimate government purpose violates the right to substantive due process; see, e.g., *Dutkiewicz* v. *Dutkiewicz*, 289

Conn. 362, 381, 957 A.2d 821 (2008); and the defendant's claim in the present case is that there is no rational nexus between the intent of the legislature, in enacting the statute, to protect those who have a diminished capacity to defend themselves or a heightened vulnerability to injury and the application of the statute to an assault on a person who has neither of those characteristics. See, e.g., *State* v. *Old South Amusements, Inc.*, 275 Ga. 274, 275, 277–78, 564 S.E.2d 710 (2002) (applying "substantive due process rational basis test" to claim that statute criminalizing use and possession of video poker amusement machines was overinclusive); *People* v. *Avila-Briones*, 49 N.E.3d 428, 433, 450 (Ill. App. 2015) (applying rational basis review to claim that sex offender statutory scheme violated substantive due process because it was overinclusive), appeal denied, 48 N.E.3d 1093 (Ill. 2016).

The concurrence and dissent also relies on authority holding that imperfect statutory classifications that are somewhat overinclusive or underinclusive can pass constitutional muster. See, e.g., *State Troopers Non-Commissioned Officers Assn. of New Jersey* v. *New Jersey*, 643 F. Supp. 2d 615, 624 (D.N.J. 2009) ("[C]ourts are compelled under [a rational basis] review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational basis review because it is not made with mathematical nicety or because in practice it results in some inequality. . . . Thus, the fact that a statute is overinclusive or [underinclusive], standing alone, does not render the statute constitutionally invalid." (Citation omitted; internal quotation marks omitted.)), aff'd, 399 Fed. Appx. 752 (3d Cir. 2010). We conclude that there is a distinction between the present case and the cases that have applied this principle to uphold the constitutionality of a statute that creates an imperfect classification, such as *State* v. *Higgins*, supra, 265 Conn. 61–62, in which the defendant challenged a statute imposing the death penalty for the murder of a victim under the age of sixteen, and *United States* v. *Thornton*, supra, 901 F.2d 739 and n.1, in which the defendant challenged a federal statute making it unlawful to distribute a controlled substance within 1000 feet of any school, college, or university. In *Higgins* and *Thornton*, our legislature and Congress, respectively, were faced with a choice of drawing lines that would inevitably be somewhat arbitrary—in the sense that the lines could be moved in one direction or the other without significantly undermining the purpose of the legislation—or drawing no line at all. In such cases, courts will defer to the legislature's choice out of necessity. See, e.g., *State* v. *Higgins*, supra, 69 ("[t]o invalidate the legislature's choice, we would either have to hold that the [l]egislature cannot draw an age line—which would eviscerate any attempt to include [child murders] within the ambit of the capital murder statute—or we would have to hold that the line should be drawn elsewhere—in which case, we would merely be legislating from the bench" (internal quotation marks omitted)).

In the present case, the legislature was not faced with the choice of drawing an arbitrary line or drawing no line. Indeed, the legislature easily could have created a classification that was rationally and closely related to the statute's purpose, namely, the class of persons who assault persons with a physical disability that diminishes their ability to defend themselves

We agree with the defendant that § 53a-60b (a) (1) is unconstitutionally overinclusive. For example, on its face, the statute clearly would apply to an assault on an Olympic boxer who suffered from chronic but episodic migraine headaches that completely incapacitated him while they were occurring even if, at the time of the assault, he was not experiencing one.[12] Such an application of the statute would have no reasonable and substantial relation to the statute's purpose of protecting those who have a diminished capacity to defend themselves or who are particularly vulnerable to injury.

At least one court has recognized that, if a statute is unconstitutionally overinclusive, the statute still may constitutionally be applied to conduct that is within the statute's rational core. In *People* v. *Rodriguez*, 66 Cal. App. 4th 157, 77 Cal. Rptr. 2d 676 (1998), the defendant challenged the constitutionality of a California statute that provided that "[t]he penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if," as was applicable to that case, "[t]he murder was intentional and perpetrated by means

or renders them particularly vulnerable to injury. Instead, the statute, as written, creates a different and much larger class—persons who assault persons with *any* physical disability—and the application of the statute to any member of that class who is not included in the smaller class bears no rational relation to a legitimate government purpose. We further note that the gloss that we place on the statute will place no greater burden on the fact finder than the statute, as written, does. Cf. *State Troopers Non-Commissioned Officers Assn. of New Jersey* v. *New Jersey*, supra, 643 F. Supp. 2d 632 (rule barring state troopers from practicing law was constitutional even though it was both overinclusive and underinclusive because defendant state department "could have determined that the practice of law [by state employees] presented difficult ethical questions better not decided on a case-by-case basis").

[12] Other examples abound. As written, the statute would apply to assaults on persons suffering from chronic ulcers, eczema, lactose intolerance, tinnitus, insomnia, allergies, taste or smelling disorders or growth disorders, even if these physical disabilities had no effect on the victim's ability to defend himself or his vulnerability to injury.

State *v.* Jodi D.

of discharging a firearm from a motor vehicle, intention-
ally at another person or persons outside the vehicle
with the intent to inflict death.'' (Internal quotation
marks omitted.) Id., 164. Specifically, the defendant in
*Rodriguez* contended that the statute was ''invalid
because it [was] unconstitutionally overinclusive on its
face.'' (Internal quotation marks omitted.) Id., 172. The
California Court of Appeal observed that ''[s]tating that
a statute is merely overinclusive . . . presupposes that
parts of the statutory coverage have been properly
included. Here, [the] defendant recognizes that [the stat-
ute] could be constitutionally applied to drive-by shoot-
ings, stating that [he] is not asking this [c]ourt to second-
guess the wisdom of creating a drive-by special circum-
stance. The [l]egislative materials, and common knowl-
edge, amply support a judgment that drive-by murders
have become a widespread threat to public safety, and
a statutory provision directed at deterring such conduct
is fully within the power of the [l]egislature and the
voters to adopt. [The defendant's] concern is the man-
ner in which the language of the provision will inevitably
be applied to reach conduct beyond the evil sought to
be remedied . . . . [The] [d]efendant's forthright rec-
ognition that [the statute] can be constitutionally
applied in at least some circumstances—at least in
cases of drive-by shootings—necessarily refutes [his]
claim of facial invalidity unless an exception to the
general rule applies. . . . [N]o such exception applies.
This is not a [f]irst [a]mendment case, the statute is not
vague for due process purposes, [the] defendant was
not involved in exercising any constitutional right, there
is no danger of chilling the exercise of constitutional
rights by increasing the penalty for murder by shooting
out of a vehicle, etc. Hence [the statute] is not unconsti-
tutional on its face.'' (Internal quotation marks omitted.)
Id.; see, e.g., id., 176 (statute constitutionally applied
to defendant because, even if it was overinclusive, he

State *v.* Jodi D.

had not established that his conduct did not come within its rational core).

We find this reasoning persuasive. Accordingly, we conclude that § 53a-60b (a) (1) constitutionally may be applied to conduct that comes within its rational core, namely, an assault on a person with a physical disability that (1) diminishes the ability of the person, or a part or organ of the person, to function properly, thereby limiting the person's ability to perform life's activities, *and* (2) diminishes the person's ability to defend himself from assault or renders him particularly vulnerable to injury. See, e.g., *Boisvert* v. *Gavis*, 332 Conn. 115, 144, 210 A.3d 1 (2019) (court may "add interpretative gloss to a challenged statute in order to render it constitutional" (internal quotation marks omitted)). In making the determination as to whether the victim had a diminished ability to defend himself or was particularly vulnerable to injury, the jury must consider the condition of the victim at the time of the assault.

In the present case, the jury was not instructed that it must find that the victim had a diminished ability to defend herself or that she was particularly vulnerable to injury at the time of the assault in order to find the defendant guilty of assault of a disabled person in the second degree under § 53a-60b (a) (1). We conclude, therefore, that the case must be remanded to the trial court for a new trial at which the jury can be instructed on the proper standard.[13] See, e.g., *State* v. *Salamon*, 287 Conn. 509, 516–17, 550, 949 A.2d 1092 (2008) (defendant was entitled to new trial when jury was not properly instructed with respect to element of offense).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to

---

[13] If the state chooses not to retry the defendant, then the trial court must vacate the defendant's conviction under § 53a-60b (a) (1) and reinstate the conviction for reckless endangerment in the second degree. See, e.g., *State* v. *Polanco*, supra, 308 Conn. 263.

State *v.* Jodi D.

reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion D'AURIA and ECKER, Js., concurred.

MULLINS, J., with whom KAHN, J., joins, concurring in part and dissenting in part. I agree with the majority that General Statutes §§ 53a-60b (a) (1) and 1-1f (b) are not unconstitutionally vague as applied to the conduct of the defendant, Jodi D. I disagree with the majority that the issue of whether § 53a-60b (a) (1) is unconstitutionally overinclusive is properly before us. Unlike the majority, I conclude that it is not.

Specifically, I do not believe that the defendant has raised the distinct claim that § 53a-60b (a) (1) is unconstitutional under the overinclusiveness doctrine. In fact, overinclusiveness typically is part of the rational basis test applied to an equal protection challenge. See, e.g., *State* v. *Higgins*, 265 Conn. 35, 68–69, 826 A.2d 1126 (2003) (discussing, as part of equal protection claim analysis, whether defendant raised claim that statute is underinclusive or overinclusive). In the present case, the defendant challenged the statute only as void for vagueness as applied to her conduct. Thus, she had to demonstrate, under the facts of this case, either "(1) [that] the statute does not provide fair warning that it applies to the conduct at issue, or (2) that [s]he was the victim of arbitrary enforcement practices." (Internal quotation marks omitted.) *Rocque* v. *Farricielli*, 269 Conn. 187, 206, 848 A.2d 1206 (2004).

The question before us, then, is whether the defendant's conduct—assaulting a person with fibromyalgia and chronic pain—falls within the statute's core of prohibited conduct. The majority concludes, and I agree, that the defendant's conduct clearly does. In my view, it is not proper to then search for and posit other scenarios in which the statute might possibly be unconstitu-

State *v.* Jodi D.

tional. Consequently, the majority's hypotheticals, including its Olympic boxer with migraines hypothetical, are inapposite in the context of the defendant's claim that the statute is unconstitutionally vague as applied to her conduct. See footnote 12 of the majority opinion and accompanying text. The defendant did not raise a separate claim under the overinclusiveness doctrine before the Appellate Court, in her petition for certification to appeal to this court, or in her brief to this court. Therefore, I disagree with the majority's reframing of the defendant's vagueness claim to include a distinctly separate overinclusiveness challenge.[1]

Accordingly, I would not address whether § 53a-60b (a) (1) is unconstitutionally overinclusive. Instead, I would conclude that § 53a-60b (a) (1) is not unconstitutionally vague as applied to the defendant's conduct. As a result, I would reach the second certified issue and agree with the Appellate Court that the evidence was sufficient to establish that the victim suffered from a physical disability within the meaning of § 53a-60b (a) (1).[2] See *State* v. *Dojnia*, 190 Conn. App. 353, 378, 210 A.3d 586 (2019). Therefore, I would affirm the judgment of the Appellate Court.

In the present case, the defendant claims that the statute violates her due process rights because it is unconstitu-

---

[1] The majority points out that I cite to "no authority for the proposition that a claim that has been distinctly raised is unreviewable because the party making the claim did not attach the correct doctrinal label . . . ." Footnote 6 of the majority opinion. That is true but also irrelevant. Because I do not believe that the defendant raised a separate overinclusiveness claim in the first instance, either before the Appellate Court or in the petition for certification, I see no reason to supply support for a proposition I am not making.

[2] Because I conclude that the defendant's sufficiency claim was resolved properly in the Appellate Court's well reasoned opinion, and that opinion fully addresses that claim; see *State* v. *Dojnia*, 190 Conn. App. 353, 371–78, 210 A.3d 586 (2019); it would serve no useful purpose for me to repeat the discussion contained therein.

State *v.* Jodi D.

tionally vague as applied to her conduct. The majority engages in a thorough and well reasoned analysis of that claim and correctly concludes, with respect to notice, "that [§§ 53a-60b (a) (1) and 1-1f (b)] are sufficiently clear to give notice to a person of ordinary intelligence that the victim was physically disabled for purposes of § 53a-60b (a) (1) . . . ."

As to arbitrary enforcement, the majority also rejects the defendant's claim that § 53a-60b (a) (1) is unconstitutional because it confers unfettered discretion on police officers and prosecutors to determine what conduct falls within its scope. Indeed, the majority concludes that "a statute that is sufficiently clear to give a person of common intelligence notice of what is prohibited necessarily is sufficiently clear to cabin the discretion of police officers and prosecutors within constitutional limits."

Notwithstanding these conclusions, the majority culls from different portions of the defendant's brief a claim under the overinclusiveness doctrine. For instance, the majority relies on the defendant's argument that "the statute fails to provide a sufficient nexus between fibromyalgia and/or other chronic pain issues and protecting people with those conditions from opportunistic criminals seeking to attack people [who are] less likely to be able to ward off such attacks." The majority also uses the defendant's reliance on the legislative history of § 53a-60b (a) (1) and her argument that the statute improperly incorporated "wholesale the intentionally broad, remedial definition of 'physically disabled' in the criminal context" to support its conclusion that the defendant raised a separate claim under the overinclusiveness doctrine.

These arguments do not reveal a separate overinclusiveness claim. Rather, these are the defendant's arguments in support of her vagueness as applied claim. The

State *v.* Jodi D.

defendant's able counsel described it as a vagueness challenge. Specifically, the defendant asserted that the lack of clarity as to what constituted physical disability under § 53a-60b (a) (1) leads to (1) lack of notice, and (2) arbitrary enforcement. The majority's conclusion that the statute was clear and that there was no arbitrary enforcement fully addresses and resolves the claim raised by the defendant and should end the analysis.

Instead, the majority reframes the defendant's arguments into a separate overinclusiveness claim. The majority explains that, "although the defendant frames this claim as implicating the vagueness doctrine, it more properly is characterized as a claim that § 53a-60b (a) (1) is unconstitutionally overinclusive. . . . In other words, the defendant effectively contends that the statute violates substantive due process principles because many of its clear applications are not rationally related to a legitimate government purpose.'' (Citations omitted; emphasis omitted.) I disagree with the majority's decision to reframe the arguments that the defendant made within her vagueness challenge and to treat them as a properly raised claim under the overinclusiveness doctrine.

The majority states that the defendant merely failed to "label her argument using the correct technical rubric . . . .'' Footnote 6 of the majority opinion. This is just simply not the case. The defendant raised and briefed only a vagueness as applied challenge. Indeed, this court has previously explained that "[t]he void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution.'' *Packer* v. *Board of Education*, 246 Conn. 89, 98, 717 A.2d 117 (1998). Thus, the overinclusiveness doctrine is part of a separate legal claim that was not raised by the defendant.

State *v.* Jodi D.

This court has consistently concluded that it "will not review a claim unless it was distinctly raised at trial. . . . We may, however, review legal arguments that differ from those raised before the trial court if they are subsumed within or intertwined with arguments related to the legal claim raised at trial." (Citations omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 203, 982 A.2d 620 (2009). The majority's reframing of the defendant's arguments into a separate overinclusiveness claim under different constitutional protections breaches this well established principle.

I can find no reference to overinclusiveness in the defendant's brief to the Appellate Court or this court, and the Appellate Court did not address the claim of overinclusiveness whatsoever. The majority points to language in the defendant's Appellate Court brief that was used in the context of her claim that § 53a-60b (a) (1) is unconstitutionally vague. In particular, the defendant argued "that ordinary people cannot understand what specifically constitutes 'physically disabled' . . . ." This is a claim directly tied to the notice prong of the vagueness challenge, not an overinclusiveness challenge. The majority also relies on the defendant's claim that, although "the legislature intended to enhance penalties [only] for crimes against the most vulnerable, including those with clearly diagnosable and severe disabilities," §§ 53a-60b (a) (1) and 1-1f (b) "arguably . . . could apply to nearly all victims." This is an argument directed at a claim of arbitrary enforcement. I disagree that either of these arguments in the defendant's Appellate Court brief constitutes a separate claim under the overinclusiveness doctrine.

Indeed, in her brief to this court, the defendant did not cite to any cases that involved claims under the overinclusiveness doctrine. Instead, she relied on *Packer* v. *Board of Education*, supra, 246 Conn. 109–10, in support of her argument that the application of § 53a-

State *v.* Jodi D.

60b (a) (1) to fibromyalgia did not have a sufficient nexus to the legislative purpose of the statute. *Packer* did not involve a claim of overinclusiveness. Instead, *Packer* involved, among other things, a vagueness as applied challenge. See id., 106–113. In *Packer*, this court considered whether there was a nexus between the legislative purpose behind a statute and the conduct prosecuted under the statute for purposes of determining whether there was adequate notice under a vagueness as applied analysis. See id., 109–10 ("[w]e further conclude . . . that a person of ordinary intelligence, apprised only of the language of [General Statutes (Rev. to 1997)] § 10-233d (a) (1) and our prior interpretation . . . of similar language, could not be reasonably certain whether possession of marijuana in the trunk of a car, off the school grounds [and] after school hours, is, by itself and without some tangible nexus to school operation, seriously disruptive of the educational process as required by [that statute] in order to subject a student to expulsion" (emphasis omitted; internal quotation marks omitted)). The defendant's reliance on *Packer* further confirms that she raised only a vagueness challenge here.

Of course, we did not certify any overinclusiveness claim. The majority recognizes this as an issue. However, notwithstanding that substantial stumbling block, the majority explains that "[w]e recognize that this issue may be outside the scope of the certified questions because overinclusiveness and vagueness are distinct concepts. Nevertheless, we address the issue because the defendant raised it before the Appellate Court and it is closely intertwined with the certified questions." Footnote 1 of the majority opinion. I disagree.

To be clear, the only questions we certified were limited to the following: (1) "Did the Appellate Court correctly conclude that . . . §§ 1-1f (b) and 53a-60b (a) (1) were not unconstitutionally vague as applied to the

State *v.* Jodi D.

defendant?'' And (2) ''[d]id the Appellate Court correctly conclude that the evidence the state presented at trial was sufficient to prove beyond a reasonable doubt that the victim was 'physically disabled' under the governing statutes?'' *State* v. *Dojnia*, 333 Conn. 914, 215 A.3d 1211 (2019). As I previously mentioned, I do not believe that overinclusiveness was raised before the Appellate Court, but, even if the defendant had raised it before the Appellate Court, that court did not address it, and we did not certify such a claim.

Furthermore, I disagree with the majority that the question of whether § 53a-60b (a) (1) is unconstitutionally overinclusive is closely intertwined with the certified questions in the present appeal such that the issue is properly before us. The question of whether a statute is overinclusive is not part of the analysis used to determine whether a statute is unconstitutionally vague as applied to a particular defendant's conduct in a particular case. Instead, the question of whether a statute is overinclusive is typically part of the analysis used when applying the rational basis test to an equal protection claim. See, e.g., *Vance* v. *Bradley*, 440 U.S. 93, 108–109, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979) (considering whether statute violates equal protection clause because it is underinclusive or overinclusive); *Big Tyme Investments, LLC* v. *Edwards*, 985 F.3d 456, 470 (5th Cir. 2021) (concluding that ''[i]mperfect classifications that are underinclusive or overinclusive pass constitutional muster'' under equal protection clause).

Indeed, most of the cases cited by the majority considered whether a statute is overinclusive as part of an equal protection claim analysis. See, e.g., *State* v. *Higgin*s, supra, 265 Conn. 69; see also, e.g., *United States* v. *Thornton*, 901 F.2d 738, 739–40 (9th Cir. 1990) (addressing defendants' claim that statute violated equal protection clause because it was both overinclusive and underinclusive). In one of the cases relied on

State *v.* Jodi D.

by the majority, *People* v. *Rodriguez*, 66 Cal. App. 4th
157, 77 Cal. Rptr. 2d 676 (1998), the court explicitly
detailed that ''[the] [d]efendant's reliance [on a claim
of overinclusiveness] appears misplaced, inasmuch as
Justice Kline's comments [in a prior decision] about
overinclusiveness and underinclusiveness appear directed
more toward questions of equal protection than sub-
stantive due process.'' Id., 179, citing *People* v. *Bostick*,
46 Cal. App. 4th 287, 292, 53 Cal. Rptr. 2d 760 (1996)
(Kline, P. J., concurring). In the present case, the defen-
dant does not assert any claim under the equal protec-
tion clause.

To be sure, ''[t]he general rule is that the constitution-
ality of a statutory provision being attacked as void for
vagueness is determined by the statute's applicability
to the particular facts at issue. . . . To do otherwise,
[in the absence of] the appearance that the statute in
question intrudes [on] fundamental guarantees, particu-
larly first amendment freedoms, would be to put courts
in the undesirable position of considering every con-
ceivable situation which might possibly arise in the
application of [the statute]. . . . Thus, outside the con-
text of the first amendment, in order to challenge suc-
cessfully the facial validity of a statute, a party is
required to demonstrate as a threshold matter that the
statute may not be applied constitutionally to the facts
of [the] case.'' (Citations omitted; footnote omitted;
internal quotation marks omitted.) *Packer* v. *Board of
Education*, supra, 246 Conn. 105–106.

In the present case, the defendant's claim does not
implicate her first amendment rights, and, therefore, in
order to be successful in her challenge to the validity
of § 53a-60b (a) (1), she must demonstrate that the
statute may not be applied constitutionally to the facts
of this case. Here, she is accused of assault on a person
with fibromyalgia and chronic pain. The statute is not
vague as applied to that conduct. There is no need to

State *v.* Jodi D.

look beyond her conduct to the hypotheticals posed by the majority. Because I agree with the majority that the defendant has not established that the statute is unconstitutional as applied to the facts of the present case, I would not attempt to "[consider] every conceivable situation which might possibly arise in the application of [the statute]." (Internal quotation marks omitted.) Id., 106.

In addition, even if I were to agree with the majority that the defendant raised a separate claim that § 53a-60b (a) (1) is unconstitutionally overinclusive as part of a substantive due process claim, I would disagree with the majority's analysis of that claim. Although the majority cites to a few cases in which courts have considered a claim of overinclusiveness as part of a substantive due process claim, I find these cases unpersuasive. As one of those cases pointed out, "a statute is not fatally infirm merely because it may be somewhat underinclusive or overinclusive." (Internal quotation marks omitted.) *People* v. *Avila-Briones*, 49 N.E.3d 428, 450 (Ill. App. 2015), appeal denied, 48 N.E.3d 1093 (Ill. 2016). Those cases support the conclusion that, even if the statute is overinclusive—that is, it may impose a burden on one who harms someone with a latent physical disability—it still has a rational relationship to protecting those with physical disabilities. Therefore, when a statute serves a legitimate government purpose— here, protecting those with physical disabilities—any fine-tuning of the statutory scheme to narrow its reach is a task for the legislature.

Moreover, because we are not dealing with a fundamental right, the rational basis test would apply in the present case. Id., 447 ("[i]f the statute does not impact a fundamental right, then we apply the [rational basis] test to the statute"). "[W]hen conducting rational basis review we will not overturn such [government action] unless the varying treatment of different groups or per-

State *v.* Jodi D.

sons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational.'' (Internal quotation marks omitted.) *Kimel* v. *Florida Board of Regents*, 528 U.S. 62, 84, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000). ''On rational basis review, those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it. . . . Ordinarily, that burden is insurmountable. [C]ourts are compelled under [a rational basis] review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational basis review because it is not made with mathematical nicety or because in practice it results in some inequality. . . . Thus, the fact that a statute is overinclusive or [underinclusive], standing alone, does not render the statute constitutionally invalid.'' (Citations omitted; internal quotation marks omitted.) *State Troopers Non-Commissioned Officers Assn. of New Jersey* v. *New Jersey*, 643 F. Supp. 2d 615, 624 (D.N.J. 2009), aff'd, 399 Fed. Appx. 752 (3d Cir. 2010).

Despite these aforementioned principles, the majority does little more than point to hypotheticals in which § 53a-60b (a) (1) could be considered overinclusive. It posits a hypothetical about an Olympic boxer with migraines and concludes that the statute is unconstitutionally overinclusive because ''such an application of the statute would have no reasonable and substantial relation to the statute's purpose of protecting those who have a diminished capacity to defend themselves or who are particularly vulnerable to injury.'' This is not how we assess the constitutionality of a statute under rational basis review. Rather, it is well established that, ''if a statute can be upheld under any plausible justification offered by the state, or even hypothesized by the court, it survives [rational basis] scrutiny.'' *Amer-*

State *v.* Jodi D.

*ican Express Travel Related Services Co.* v. *Kentucky*, 641 F.3d 685, 690 (6th Cir. 2011).

Thus, on the basis of the record before us, I cannot conclude that the legislature acted irrationally in providing for a heightened punishment of an individual who assaults someone with a physical disability. Even if § 53a-60b (a) (1) lacks mathematical nicety in its application, the statute still has a rational relationship to a legitimate government purpose—namely, protecting people with physical disabilities that diminish their ability to function. Because there are plausible justifications for upholding the constitutionality of this statute—we need look no further than the case at hand, in which a person with fibromyalgia and chronic pain is assaulted—there is a rational relationship to the legislative purpose of protecting physically disabled people. The majority's view turns rational basis review on its head because, instead of negating every conceivable basis that might support the statute, the majority looks to find conceivable examples of how the statute may be overinclusive. Examples of overinclusiveness, however, do not render statutes unconstitutional.

Accordingly, in the absence of the defendant's raising and analyzing a distinct legal claim of overinclusiveness, I would not read a separate equal protection or substantive due process overinclusiveness claim into the defendant's vagueness challenge. Rather, I conclude that the majority's analysis of overinclusiveness is misplaced. Moreover, even if I were to agree with the majority that the defendant raised a claim under the overinclusiveness doctrine, I disagree that the statute fails rational basis review.

I am mindful that "legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the

statute unconstitutional beyond a reasonable doubt . . . ." (Citations omitted; internal quotation marks omitted.) *Packer* v. *Board of Education*, supra, 246 Conn. 101–102. I cannot conclude that the defendant has met her heavy burden in the present case.

Accordingly, I would affirm the judgment of the Appellate Court.

For the reasons I previously explained, I respectfully dissent in part.

———————————————